**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| **WILLIE WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cv-01766-MSN-LRV** |
| | ) | |
| **NAVY-MARINE CORPS RELIEF** | ) | |
| **SOCIETY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION TO DISMISS AMENDED COMPLAINT**

Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
John W. H. Harding, Va. Bar No. 87602
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
Email: eisler@islerdare.com
Email: mticatch@islerdare.com
Email: jharding@islerdare.com

*Counsel for Defendant*
*Navy-Marine Corps Relief Society*

# TABLE OF CONTENTS

I. BACKGROUND ........................................................................................................... 1

II. PROCEDURAL HISTORY ......................................................................................... 4

III. ARGUMENT ............................................................................................................. 4

A.     Plaintiff Has Not Stated a Claim for Hostile Work Environment. ..................... 4

    1.     A Significant Portion of the Hostile Environment Allegations Are
        Time-Barred. ...........................................................................................6

    2.     Plaintiff Has Not Sufficiently Pled the Alleged Conduct Was Based on
        His Race. ..................................................................................................7

    3.     Plaintiff Has Not Pled Conduct That Was Sufficiently Severe or
        Pervasive. ................................................................................................9

B.     Plaintiff Has Not Stated a Claim for Race Discrimination. ............................. 10

    1.     Plaintiff's Termination Is the Only Actionable Adverse Employment
        Action. ...................................................................................................11

    2.     Plaintiff Has Failed to Plausibly Plead Facts Suggesting a Discriminatory
        Animus Underlying the Termination of His Employment. ....................12

    3.     None of the Other Allegations Referenced By Plaintiff Lead to an
        Inference of Discriminatory Animus. ...................................................13

    4.     Plaintiff Has Failed to Plead Discriminatory Animus Based on
        Comparators. .........................................................................................15

C.     Plaintiff Has Not Stated a Claim for Retaliation under Title VII. ................... 17

    1.     Plaintiff's Termination Is Not Plausibly Connected to Any Protected
        Activity. ................................................................................................18

    2.     Plaintiff Cannot Base a Retaliation Claim on the Termination of Other
        Employees. ............................................................................................20

D.   Plaintiff Has Not Stated a Claim for Disability Discrimination. ....................................... 22

E.   Plaintiff Has Not Stated a Claim for Violation of the FMLA............................................ 23

  1.   Plaintiff Has Failed to Allege a Claim for FMLA Retaliation..............................24

  2.   Plaintiff Has Failed to Allege a Claim for FMLA Interference.............................24

F.   Plaintiff's Claims Should Be Dismissed With Prejudice.................................................. 26

IV.  CONCLUSION...................................................................................................................... 26

# TABLE OF AUTHORITIES

*Abdelbaki v. N. Virginia Cmty. Coll.*,
  2022 WL 811296 (E.D. Va. 2022) ........................................................................... 17

*Adams v. Anne Arundel Cnty. Pub. Sch.*,
  789 F.3d 422 (4th Cir. 2015) ................................................................................... 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 12

*Barnhill v. Garland*,
  636 F. Supp. 3d 592 (E.D. Va. 2022) ...................................................................... 11

*Brackney-Wheelock v. City of Charlottesville*,
  652 F. Supp. 3d 603 (W.D. Va. 2023) ....................................................................... 7

*Carroll v. Amazon Data Servs., Inc.*,
  2022 WL 3161895 (E.D. Va. 2022) ........................................................................... 9

*Coleman v. Maryland Court of Appeals*,
  626 F.3d 187 (4th Cir. 2010) ................................................................................... 16

*Davis v. Navy Fed. Credit Union*,
  2012 WL 948428 (E.D. Va. 2012) ........................................................................... 25

*Favi v. Virginia State Univ.*,
  2020 WL 1698750 (E.D. Va. 2020) ......................................................................... 17

*Fleming v. Norfolk S. Corp.*,
  2018 WL 1626523 (M.D.N.C. 2018) ....................................................................... 21

*Gooding-Williams v. Fairfax Cnty. Sch. Bd.*,
  2019 WL 3268831 (E.D. Va. 2019) ......................................................................... 10

*Grimes v. Dep't of Def.*,
  2025 WL 1334054 (E.D. Va. 2025) .................................................................... 10, 11

*Guillen v. Esper*,
  2020 WL 3965007 (E.D. Va. 2020) ......................................................................... 16

*Hall v. Cap. One Fin. Corp.*,
  2023 WL 2333304, n. 7 (E.D. Va. 2023) ................................................................. 26

*Halpern v. Wake Forest Univ. Health Scis.*,
  669 F.3d 454 (4th Cir. 2012) ................................................................................... 23

*Harris v. Home Sales Co.*,
  2011 WL 826347 (D. Md. 2011) ...................................................................... 18

*Harris v. Sec. of Homeland Security*,
  2023 WL 4850164 (E.D. Va. 2023) ............................................................... 9, 10

*Haywood v. Locke*,
  387 F. App'x 355 (4th Cir. 2010) .................................................................... 16

*High v. Wells Fargo Bank*,
  2023 WL 2505540 (E.D. Va. 2023) ............................................................. 4, 5, 9

*Honor v. Booz-Allen & Ham., Inc.*,
  383 F.3d 180 (4th Cir. 2004) ............................................................................ 6

*Int'l Paper Co.*,
  936 F.3d 196  (4th Cir. 2019) ........................................................................... 6

*Jensen-Graf v. Chesapeake Employers' Ins. Co.*,
  616 F. App'x 596 (4th Cir. 2015) .................................................................... 11

*Johnson v. Otter Tail Cnty.*,
  2001 WL 664217 (8th Cir. 2001) ..................................................................... 22

*Jones v. Constellation Energy Projects & Servs. Grp., Inc.*,
  629 F. App'x 466 (4th Cir. 2015) .................................................................... 11

*Jones v. R.R. Donnelley & Sons Co.*,
  541 U.S. 369 (2004) .......................................................................................... 6

*Kelly v. Town of Abingdon, Virginia*,
  90 F.4th 158 (4th Cir. 2024) ........................................................................... 23

*Langel v. Arkansas Foundation for Medical Care*,
  2021 WL 4027719 (E.D. Ark. 2021) ................................................................. 8

*Leonard v. Tenet*,
  2004 WL 3688406 (E.D. Va. 2004) .................................................................... 9

*Mackall v. Colvin*,
  2015 WL 412922 (D. Md. 2015) ...................................................................... 21

*Maynard v. Old Dominion Univ.*,
  2023 WL 2277098 (E.D. Va. 2023) .................................................................. 11

*McCarty v. City of Alexandria*,
  2024 WL 5081956 (E.D. Va. 2024) .................................................................... 4

*McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*,
    780 F.3d 582 (4th Cir. 2015) ................................................................... 12

*Morton v. Froehling & Robertson, Inc.*,
    786 F. Supp. 3d 965 (E.D. Va. 2025) ...................................................... 10

*Mulgrew v. Prince William Cnty. Sch. Bd.*,
    2023 WL 7222108 (E.D. Va. 2023) .......................................................... 17

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ..................................................................................... 17

*Netter v. Barnes*,
    908 F.3d 932 (4th Cir. 2018) .............................................................. 18, 21

*Pettis v. Nottoway Cty School Bd.*,
    592 F. App'x 158 (4th Cir. 2014) .............................................................. 19

*Ruffin v. Anthem, Inc.*,
    2022 WL 4451328 (E.D. Va. 2022) ....................................................... 6, 7

*Seabrook v. Driscoll*,
    148 F.4th 264 (4th Cir. 2025) ................................................................ 7, 9

*Sorto v. AutoZone, Inc.*,
    821 F. App'x 188 (4th Cir. 2020) ................................................................ 8

*Thompson v. N. Am. Stainless, LP*,
    562 U.S. 170 (2011) ............................................................................. 20, 21

*Threat v. City of Cleveland, Ohio*,
    6 F.4th 672 (6th Cir. 2021) ........................................................................ 20

*Tomasello v.  Fairfax County*,
    2016 WL 165708 (E.D. Va. 2016) ............................................................ 22

*Tomov v. Micron Tech. Inc.*,
    2024 WL 4806489, n. 5 (E.D. Va. 2024) ................................................. 26

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..................................................................................... 20

*United States ex rel. Nicholson v. MedCom Carolinas, Inc.*,
    42 F.4th 185 (4th Cir. 2022) ...................................................................... 26

*Washington v. Offender Aid & Restoration*,
    677 F. Supp. 3d 383 (W.D. Va. 2023) ....................................................... 4

v

Defendant Navy-Marine Corps Relief Society ("NMCRS" or the "Society") hereby submits this memorandum in support of its Motion to Dismiss Plaintiff's claims in the Amended Complaint pursuant to Rule 12(b)(6). For the reasons set forth below, Plaintiff fails to state a claim upon which relief can be granted, and his claims should be dismissed with prejudice.

## I.  BACKGROUND[1]

The Navy-Marine Corps Relief Society is a non-profit organization that provides emergency financial assistance to active duty and retired Navy and Marine Corps personnel and their families. Through grants and loans, NMCRS provides assistance with basic living expenses such as food, rent, utilities, emergency transportation, funerals, medical and dental bills, essential car repair, pay problems, and other emergency needs to active and retired servicemembers in need.

Plaintiff is a former employee of NMCRS, where he served as the Chief Information Officer ("CIO"). Am. Compl. ¶ 24. As best as can be discerned from his Amended Complaint, it appears that throughout his time at NMCRS, Plaintiff disagreed with normal business decisions being made by NMCRS leadership. Although Plaintiff attempts to frame his claims as relating to his race, his allegations make clear that many of his grievances were not centered on racial concerns. For example, at one point in 2020, the Society considered freezing its defined benefit pension plan, and Plaintiff disagreed with that decision and was frustrated that he was not invited to a meeting to discuss that issue. *Id*. ¶ 48. However, after Plaintiff "formally protested," he was permitted to participate, where he "spoke out forcefully against the proposed hard freeze." *Id.*

---

[1] Given the standard on a Motion to Dismiss, the Society references the allegations as alleged in the Amended Complaint. The Society strongly disputes the majority of those allegations and reserves the right to challenge those factual allegations to the extent this matter continues. In light of the sheer size of the Amended Complaint, it is not possible to fully summarize the wide-ranging allegations in the pleading. To the extent allegations are relevant to the claims, they are discussed in the Argument below.

¶ 50.  According to the Amended Complaint, the Society's then-CEO, Lieutenant General Jack Klimp, (USMC, Retired), was unhappy with Plaintiff's strident disagreement with this normal business decision.  *See id.* ¶ 51.

Plaintiff also alleges that he opposed the Society's consideration of a bylaw change that would have required the leader of the organization to have had prior military service before assuming the CEO role.  *See id.* ¶ 56.  Although Plaintiff somehow interprets the proposal as an attack on him, there is an obvious non-discriminatory reason the Society – which exists solely to serve servicemembers and their families – might wish to ensure that its CEO had military experience.  Furthermore, Plaintiff's own allegations indicate that the Society had historically had such a rule in its bylaws, and the Society ultimately agreed not to adopt the bylaw.  *Id.* ¶¶ 25, 58.

Plaintiff also "formally protested" a two-year salary freeze on a new IT director, Girish Pillai, which Plaintiff called "morally and ethically repugnant."  *Id.* ¶ 54. Plaintiff fails to adequately explain in his pleading why a decision to hold a new employee's salary steady for two years was repugnant.  In any event, Plaintiff claims that because of this disagreement, Gen. Klimp reduced his authority to set salary and hiring terms.  *Id.*

Beginning in September 2020, Gen. Klimp seems to have considered terminating Plaintiff's employment but ultimately did not do so.  *See id.* ¶ 55.  According to the Amended Complaint, in July 2022, Gen. Klimp made the decision to terminate Plaintiff but apparently did not inform him at that time about the decision.  *See id.* ¶ 79.  The next month, Plaintiff was given a Performance Improvement Plan, which Plaintiff "protested."  *See id.* ¶ 245(f).  In October 2022, the Society replaced Gen. Klimp as CEO with Lieutenant General Robert Ruark (USMC, Retired). *See id.*¶ 109.  Plaintiff claims that during the transition, Gen. Klimp instructed Gen. Ruark to terminate Plaintiff's employment, and the decision to terminate was "finalized" at that time.  *See*

2

*id.* ¶ 109.  Plaintiff was informed of his termination seven months later on May 23, 2023.  *Id.* ¶ 58.

In an attempt to add some weight to his otherwise thin claims of race discrimination, Plaintiff's Amended Complaint repeatedly references events from 2017 involving the Society's then-COO Pete Collins.  *See, e.g., id.* ¶¶ 35-37.  Collins allegedly made a derogatory remark regarding the racial makeup of the IT department in 2017 and later directed an internal investigation of Plaintiff for financial impropriety.  *Id.*  After Gen. Klimp assumed leadership of the Society, Collins was terminated.  *See id.* ¶¶ 40-42.  Despite Plaintiff's frequent reference to these events, nothing about them suggests that Gen. Klimp (or his successor) harbored racial animus towards Plaintiff.

Plaintiff also repeatedly alleges in the Amended Complaint that, in 2022, the Society's COO, Rear Admiral Dawn Cutler (USN, Retired), said "someone needed to crack the whip on [Williams]."  *Id.* ¶¶ 74, 107(c), 139(h), 141(a), 149(a), 150, 152, 165(a), 166(c), 177(a), 178, 180(d), 213(c), 224(a), 225(c), 236(a).  Plaintiff, who provides no context for that quote, asserts that the statement had "explicit racial connotations of slavery and violence."  *Id.* ¶ 74.  But other than Plaintiff's conclusory assertion, there are no facts alleged in the Amended Complaint that would suggest the remark was race-based in any way, rather than being used in its ordinary manner – to assert Plaintiff needed to be kept on task.  Further, there is no suggestion that Adm. Cutler played a part in the decision to terminate Plaintiff's employment, making the remark irrelevant to Plaintiff's termination claim.

In the end, Plaintiff's lengthy and repetitive Amended Complaint is long on heat, but short on allegations amounting to actual legal claims.  Although he asserts claims for Hostile Work Environment, Race Discrimination, Title VII Retaliation, Disability Discrimination, and violation

of the FMLA, none are well stated.  For the reasons explained below, each of these claims should be dismissed with prejudice.

## II.  PROCEDURAL HISTORY

Plaintiff filed his original Complaint on October 14, 2025.  Dkt. 1  The Complaint was 41 pages and contained 12 separate counts, including a number of claims that were facially defective, such as claims for: age discrimination, intentional infliction of emotional distress, ERISA retaliation, and failure to provide documents.  *See id.*  Prior to responding to the Complaint, Counsel for the parties discussed issues with the Complaint, and Plaintiff agreed to drop these counts.  On November 21, 2025, Plaintiff filed his operative pleading, the Amended Complaint. Dkt. 9.  Although he dropped each of the facially defective claims in his Amended Complaint, Plaintiff also expanded his pleading from 41 pages to a massive 101 pages and added a new claim for Retaliation under Title VII. *See id.*  Rather than adding any real factual support to the remaining claims, the additional pages consist of repeating the same factual allegations *ad nauseam* as well as adding irrelevant factual allegations.  As explained more fully below, despite its attempt to drum up a claim by inflating its length, the Amended Complaint fails to properly state any of the claims asserted and should be dismissed in its entirety.

## III.  ARGUMENT

### A.    **Plaintiff Has Not Stated a Claim for Hostile Work Environment.**

In Counts Two, Four, and Eight, Plaintiff asserts claims for Hostile Work Environment under Section 1981, Title VII, and the VHRA, respectively.  With the exception of the limitations period, these claims all require the same essential elements and are subject to the same analysis on a motion to dismiss.  *See, e.g., Washington v. Offender Aid & Restoration*, 677 F. Supp. 3d 383, 393 (W.D. Va. 2023); *McCarty v. City of Alexandria*, 2024 WL 5081956, at *4 (E.D. Va. 2024); *High v. Wells Fargo Bank*, 2023 WL 2505540, at *7 (E.D. Va. 2023).

In order to state a claim for a hostile work environment under each of the statutes, Plaintiff must plead facts sufficient to establish:

(1)     unwelcome conduct;

(2)     that is based on the plaintiff's protected status;

(3)     which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and

(4)     which is imputable to the employer.

*High*, 2023 WL 2505540 at *7.

Plaintiff identifies the following conduct as making up his hostile environment claim:

1. Sometime prior to 2018, Pete Collins made a derogatory comment about the IT department being run by "a black, an Asian, and a Jew." Am. Compl. ¶¶ 149(b), 35. Collins was terminated in February 2020. *Id.* ¶ 149(b).

2. In 2017, before Collins was terminated, he subjected Plaintiff to an internal investigation for financial impropriety. *Id.* ¶¶ 36-37. In April 2020, after Collins' termination, the Society's Counsel purportedly characterized the investigation into Plaintiff's conduct as a "witch hunt" by Collins. *Id.* ¶ 149(d).

3. According to the Amended Complaint, in 2018, the Society "forced out" a Black employee, Nicole Hillare. *Id.* ¶¶ 77(a), 149(h). At some other undefined times between 2018 and 2024, the Society "forced out" one other Black employee (Sylvia Adams) and one Asian employee (Tsui-Ti Lui). *Id.* ¶¶ 77(b), (c).

4. In 2020, Plaintiff allegedly was excluded from meetings, and his authority to sign on behalf of the Society and authority to hire were curtailed. *Id.*, ¶¶ 149(e), 47, 48, 54. That same year, the Society also considered, but did not adopt, a bylaw amendment requiring past military service that would have prevented Plaintiff from being in the line of succession for CEO. *Id.* ¶¶ 149(e), 56. Likewise, in two meetings around 2020-2021, then-CEO, Gen. Klimp did not specifically thank Plaintiff, while recognizing the other executive officers. *Id.* ¶¶ 149(e), 60.

5. At some unknown time, Adm. Cutler allegedly screamed at Ms. Woods and Ms. Briggs, who are Black and Asian, respectively. *Id.* ¶¶ 149(c). As best as can be discerned, Plaintiff did not witness this conduct but heard about it from Ms. Woods. *See id.* ¶ 75.

6. On June 3, 2022, Adm. Cutler made a statement that "someone needed to crack the whip on [Williams]." *Id.* ¶¶ 149(a), 74.

7. On July 12, 2022, the Society began actively recruiting for the CIO position, which Plaintiff occupied. *Id.* ¶¶ 149(f), 79. On August 23, 2022, Plaintiff was placed on a Performance Improvement Plan. *Id.* ¶¶ 149(f), 86.

8.  In March 2023, the outgoing CEO, Gen. Klimp, told the incoming CEO, Gen. Ruark, that his "first task" was "to fire Willie." *Id.* ¶ 149(g).

9.  In November 2024 – <u>18 months</u> after Plaintiff's employment with the Society ended – the organization had a reduction in force that eliminated the positions of Thelisa Woods (Black), Gabriella Telles (Hispanic), and Richard Von Zimmer (mixed-race). *Id.* ¶¶ 149(h), 77(e).

As explained below, Plaintiff does not come close to meeting the standard required to plead a hostile environment claim.

### 1.     *A Significant Portion of the Hostile Environment Allegations Are Time-Barred.*

The limitation period for Title VII and VHRA is 300 days prior to the filing of the Charge, which in this case would limit the relevant events to those that occurred on or after May 23, 2023. *See* 42 U.S.C. § 2000e-5(e)(1); Va. Code § 2.2-3907(A).  The relevant limitations period for the Section 1981 claim is four years from the filing of the Complaint, which in this case would limit the relevant events to those occurring on or after October 14, 2021.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 385 (2004).

Under the continuing violation doctrine, acts related to a harassment claim that occurred prior to a limitations period can sometimes be "anchored" (and thus considered) by acts that occur within the statutory period– but *only* when "the incidents involve the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers." *Ruffin v. Anthem, Inc.*, 2022 WL 4451328, at *5 (E.D. Va. 2022), *aff'd*, 2023 WL 4181281 (4th Cir. 2023).

Because none of the events asserted as the basis for the hostile work environment claims (Nos.1-8) took place on or after May 23, 2023,[2] the claims under Title VII and VHRA are entirely

---

[2] The only exception is the allegation (No. 9) that there was a reduction in force in November 2024 – 18 months after Plaintiff's termination – which affected other minority employees.  However, it is well established that a hostile environment claim must based on the environment the plaintiff personally experienced <u>during</u> his employment.  *See Dawson v. Int'l Paper Co.*, 936 F.3d 196 n. 6 (4th Cir. 2019) (quoting *Honor v. Booz-Allen & Ham., Inc.*, 383 F.3d 180, 190 n. 6 (4th Cir. 2004) ("*Honor* makes much of the treatment of other Booz Allen employees, but we focus on Honor's

time-barred, and Counts Four and Eight should be dismissed on this ground alone.

With regard to the Section 1981 hostile work environment claim, the events alleged in Nos. 1-4 predate the relevant time frame of that statute. Moreover, contrary to the principles outlined in *Ruffin, supra*, the acts described in the pre-October 2021 time frame do not involve the same type of actions or the same managers as the acts pled in 2022-2023. For example, the allegations about Collins occurred in 2017-2018; yet Plaintiff acknowledges that Collins was terminated in February 2020, *see* Am. Compl. ¶¶ 149(b), meaning his conduct cannot be connected to any conduct that occurred after October 2021. Thus, these allegations must be disregarded in considering Plaintiff's Section 1981 hostile environment claim, and the only alleged conduct that can be considered in support of Plaintiff's Section 1981 hostile work environment claim are those alleged in Nos. 6-8 above, which, as shown below, are clearly insufficient.

### 2. *Plaintiff Has Not Sufficiently Pled the Alleged Conduct Was Based on His Race.*

In order to meet the second element of a hostile environment claim, Plaintiff is required to allege sufficient facts to demonstrate that he "would not have experienced the harassment 'but for'" his race. *Seabrook v. Driscoll*, 148 F.4th 264, 271 (4th Cir. 2025). Plaintiff has not done so.

For example, even putting aside the limitations problems, the conduct that allegedly occurred in 2020 bears no tangible relationship to Plaintiff's race. According to his own allegations, Plaintiff lost some supervisory authority to set salaries and hiring terms, not because of his race, but because he "formally protested" a "two-year salary freeze imposed on a new IT director." Am. Compl. ¶ 54. In light of his own allegations, Plaintiff cannot plausibly state that

---

personal experience.")). Thus, events that occurred *after* Plaintiff's termination cannot be relevant to his hostile environment claim. *See Brackney-Wheelock v. City of Charlottesville*, 652 F. Supp. 3d 603, 630 (W.D. Va. 2023). Consequently, Plaintiff's allegation that three other employees were terminated in November 2024 is simply not relevant to his hostile work environment claims.

his race was the but-for reason for his "reduction" in responsibilities.

Similarly, Plaintiff complains about a bylaw that was proposed, but not adopted, that would have prevented non-military veterans, such as himself, from assuming the top leadership spot of the organization. *Id.* ¶ 56. But there is an obvious legitimate reason why executives might consider a bylaw requiring the leader of the Navy-Marine Corps Relief Society – an organization dedicated to helping active members of the Navy and Marine Corps – have had prior military service before assuming the top leadership role. Plaintiff has pled no facts that would suggest that such a bylaw would not have been considered "but for" Plaintiff's race.

Likewise, Plaintiff fails to adequately plead a sufficiently plausible basis for suggesting his being placed on a performance improvement plan was because of or would not have occurred "but for" Plaintiff's race.

The only conduct in the allegations that could even conceivably be construed as racially tinged was the allegation that Adm. Cutler said that "someone needed to crack the whip on [Williams]." But that phrase is not inherently a race-based statement,[3] and Plaintiff's subjective interpretation of the statement (which was not made in his presence) as a racial slur does not make it so. *See Sorto v. AutoZone, Inc.*, 821 F. App'x 188, 192 (4th Cir. 2020) (plaintiff's subjective interpretation that being called a "sheep" was a "race-based slur" was insufficient to demonstrate race-based discrimination); *see also Langel v. Arkansas Foundation for Medical Care*, 2021 WL 4027719 (E.D. Ark. 2021) (finding that "[manager's] 'crack the whip' comments . . . bear at most

---

[3] Although Plaintiff asserts in his Amended Complaint that the idiomatic phrase is related to "slavery and violence," that assertion is no more than his personal opinion and simply not accurate. According to online sources, the "expression, first recorded in 1647, alludes to drivers of horse-drawn wagons who snapped their whips hard, producing a loud cracking noise." *Crack the Whip*, Dictionary.com, https://www.dictionary.com/browse/crack-the-whip (last visited Dec. 5, 2025). Given the phrase's origins and general use in contemporary society, there is no reason to believe a speaker who used this phrase intends to imply anything regarding race.

a tenuous connection to race and are insufficient, even if construed as true and taken collectively, to defeat the summary judgment motion.").  As noted above, the phrase purportedly used by Adm. Cutler is a common phrase suggesting that someone needed to keep Plaintiff focused on his tasks.

In summary, Plaintiff has not pled that the conduct he was subjected was based on his race.

### 3.    *Plaintiff Has Not Pled Conduct That Was Sufficiently Severe or Pervasive.*

In order to meet the third prong of a hostile environment claim, a plaintiff "must clear a high bar" and "allege sufficient facts plausibly demonstrating that the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *High v. Wells Fargo Bank*, 2023 WL 2505540, at *8 (E.D. Va. 2023).  "Factors relevant to the 'severe or pervasive' inquiry include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Sec. of Homeland Security*, 2023 WL 4850164 at *5 (E.D. Va. 2023) (Nachmanoff, J.).

The conduct that Plaintiff has alleged does not come close to meeting the high bar necessary to state a claim.  First, "[n]one of the actions [he] identifies are objectively abusive, humiliating, or physically threatening." *Seabrook v. Driscoll*, 148 F.4th 264, 272 (4th Cir. 2025).

Second, the alleged conduct is not "frequent," as it involves a handful of unconnected events over a six-year period. *Leonard v. Tenet*, 2004 WL 3688406, at *9 (E.D. Va. 2004) ("Courts generally require that the offensive conduct occur on a nearly constant basis."), *aff'd*, 115 F. App'x 169 (4th Cir. 2004).

Third, the alleged conduct is the type of regular workplace conduct that courts have found insufficient to meet the severe or pervasive test. *See, e.g., Carroll v. Amazon Data Servs., Inc.*, 2022 WL 3161895, at *6 (E.D. Va. 2022) (allegations of increased criticisms, unfavorable

assignments, and unjustified PIP not sufficient to show severe or pervasive conduct); *Gooding-Williams v. Fairfax Cnty. Sch. Bd.*, 2019 WL 3268831, at *6 (E.D. Va. 2019) *aff'd*, 825 F. App'x 147 (4th Cir. 2020) (no severe or pervasive conduct when plaintiff alleged supervisors of "closely monitoring her conduct and activities, criticizing her performance, putting her on a PIP, reassigning her job duties, revoking her telework privileges, and changing her schedule.").

Thus, even if Plaintiff could demonstrate that the conduct he complains of was racially motivated (which he cannot), the hostile environment claim would still fail because the alleged conduct was not sufficiently severe or pervasive to overcome the "steep" hill he must climb to establish such a claim. *Harris*, 2023 WL 4850164 at *5.

For all the reasons above, Counts Two, Four, and Eight should be dismissed with prejudice.

**B.**    **Plaintiff Has Not Stated a Claim for Race Discrimination.**

In Counts One, Three, and Seven, Plaintiff asserts claims of Race Discrimination under Section 1981, Title VII, and the VHRA, respectively. As with the hostile environment claims, excepting the differences in limitations periods, the race discrimination claims are all subject to the same analysis on a motion to dismiss. *E.g., Morton v. Froehling & Robertson, Inc.*, 786 F. Supp. 3d 965, 971 (E.D. Va. 2025). As previously noted, the effect of the Title VII and VHRA limitations period means only events on or after May 23, 2023, are actionable in Counts Three and Seven, and only events on or after October 14, 2021, are actionable under Section 1981.

To state a claim for disparate treatment, a plaintiff must plausibly allege (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) his job performance was satisfactory; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *Grimes v. Dep't of Def.*, 2025 WL 1334054, at *3 (E.D. Va. 2025) (Nachmanoff, J.). In his Complaint, Plaintiff identifies the following actions on which he bases his racial discrimination claims:

- In 2020, he was excluded from meetings, and his authority to sign contracts and set subordinates' salaries was removed. Am. Compl., ¶¶ 139(a), 47, 48, 54.

- In August 2022, Plaintiff was placed on a performance improvement plan. *Id.* ¶¶ 139(b).

- In July 2022, the Society began actively recruiting for the CIO position that Plaintiff occupied. *Id.* On September 25, 2022, the Society "publicly posted" and recruited for that position. *Id.* ¶¶ 139(c), 101.

- On May 23, 2023, Plaintiff's employment was terminated. *Id.* ¶¶ 139(d).

## 1. *Plaintiff's Termination Is the Only Actionable Adverse Employment Action.*

To be actionable, an employment action "must adversely affect the terms, conditions, or benefits of the plaintiff's employment" and must represent more than "mere inconvenience, annoyance, disappointment, or change." *Grimes*, 2025 WL 1334054 at *3.

Plaintiff's exclusion from meetings and reduction in authority occurred in 2020 outside the limitations period of all three statutes, and therefore is not actionable. Moreover, such conduct are not adverse actions. *See, e.g., Maynard v. Old Dominion Univ.*, 2023 WL 2277098, at *9 (E.D. Va. 2023); *Barnhill v. Garland*, 636 F. Supp. 3d 592, 605 (E.D. Va. 2022). Similarly, because being placed on a performance improvement plan did not alter the terms or conditions of Plaintiff's employment, it is also not actionable. *See, e.g., Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015); *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015). Likewise, any recruiting efforts made by the Society were not adverse actions because, again, the mere attempt to recruit for a new employee would not have altered the terms or conditions of Plaintiff's employment with the Society.[4]

---

[4] Even if the performance improvement plan and the recruitment were somehow adverse actions, such actions cannot be part of Counts Three and Seven, as the events occurred outside the applicable limitations period.

Consequently, the only adverse action that Plaintiff has pled is his termination of employment on May 23, 2023.

### 2.    Plaintiff Has Failed to Plausibly Plead Facts Suggesting a Discriminatory Animus Underlying the Termination of His Employment.

In order to state a race discrimination claim for his termination, Plaintiff must allege facts that plausibly suggest the termination was <u>because of</u> his race.  *E.g., McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 588 (4th Cir. 2015).  It is insufficient for a plaintiff to rely on conclusory allegations or mere speculation of bias.  *Id.* at 586.  Instead, his pleading must set out sufficient facts that plausibly overcome the "obvious alternative explanation" that the decisionmaker acted for ordinary business reasons and, instead, plausibly suggest that the decisionmaker acted with a discriminatory mind.  *Id.* at 588 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).  This pleading standard exists in order to avoid a situation where "any qualified member of a protected class who alleges nothing more than that she was denied a position or promotion in favor of someone outside her protected class would be able to survive a Rule 12(b)(6) motion."  *Id.*  Plaintiff does not meet the required standard.

It appears from the Amended Complaint that the possibility of Plaintiff's termination first arose in September 2020, when then-CEO Klimp circulated a memorandum that outlined a plan to terminate Plaintiff.  Am. Compl. ¶ 55.  As best as can be discerned, Plaintiff alleges this memorandum was in retaliation for Plaintiff's opposition to what he perceived as the "unethical and unprofessional practice" of imposing a two-year salary freeze on a new IT director.  *See id.* ¶ 54.  However, there is no plausible allegation that Gen. Klimp was motivated by racial bias in contemplating Plaintiff's termination (as opposed to his obstinance about the pay freeze).

Next, Plaintiff alleges that there was a meeting of executive officers in September 2021 to discuss his termination.  *Id.* ¶ 71.  Again, there is no factual basis for suggesting this meeting was

motivated by racial bias rather than Plaintiff's continued poor performance.

Plaintiff further alleges that in July 2022, Gen. Klimp made the unannounced decision to terminate Plaintiff's employment, which Plaintiff asserts must have been made at this time because Commander Chris Dour(USN, Retired) and Adm. Cutler began allegedly recruiting for the CIO position. *Id.* ¶ 79. Plaintiff does not allege any plausible basis for suggesting this alleged decision by Gen. Klimp was the product of racial bias rather than, again, Plaintiff's ongoing poor performance. In August 2022, Gen. Klimp put Plaintiff on the performance improvement plan, which Plaintiff seems to suggest (without any factual support) was in retaliation for his taking FMLA leave to care for his wife. *See id.* ¶ 86.

In October 2022, Gen. Klimp was replaced in the CEO role by Robert Ruark. *See id.* ¶ 109. In the transition, Gen. Klimp allegedly provided Gen. Ruark with negative information about Plaintiff and told Gen. Ruark to terminate Plaintiff's employment. *Id.* Plaintiff alleges that the "plan to terminate" was "finalized" in October 2022. *Id.* Seven months later, on May 23, 2023, Gen. Ruark notified Plaintiff that his employment was terminated. *Id.* ¶ 58. It remains somewhat unclear whether Plaintiff is alleging that Gen. Klimp or Gen. Ruark was the decisionmaker–but in either case, there are no plausible allegations that any of the actions by either CEO were motivated by racial animus rather than the ongoing concerns with his performance as CIO, which are outlined throughout the Amended Complaint itself.

### 3. *None of the Other Allegations Referenced By Plaintiff Lead to an Inference of Discriminatory Animus.*

In the Amended Complaint, Plaintiff puts forth a number of events that he contends suggest that racial bias played a role in the decision to terminate his employment, including:

- On June 3, 2022, Dawn Cutler made the statement that "someone needed to crack the whip on [Williams]." Am. Compl. ¶¶ 141(a). Plaintiff alleges the remark was reported to HR by another employee as having a racial connotation, but HR took no corrective action. *Id.*

13

- In October 2021, Field Director Bill Whitmire praised Plaintiff's IT team and Gen. Klimp responded, "Good stuff. Nice to be appreciated." *Id.* ¶ 30. As best as can be discerned, Plaintiff believes that this interaction demonstrates that his being placed on the performance improvement plan 10 months later was somehow "fraudulent." *See id.* ¶ 141(d).

- Plaintiff's August 2022 performance improvement plan cited three "core categories" as needing improvement: Communication, Relationships, and Execution. Plaintiff claims that an "independent Team 360 Review" found that the Society, as an organization, had failing scores in those categories as well. *Id.* ¶ 141(b).

- During the transition of the Society's CEOs, the outgoing CEO, Gen. Klimp, allegedly told the incoming CEO, Gen. Ruark, to terminate Plaintiff's employment. *Id.* ¶ 141(e).

None of these events even remotely suggest that Plaintiff's termination of employment was the result of racial animus. First, although Plaintiff repeatedly claims that Adm. Cutler's statement was "racially charged," as noted, it is a common phrase that does not inherently suggest any racial animus on the part of the speaker. More importantly, Plaintiff does not allege that Adm. Cutler was involved in the decision to terminate, and consequently her comment – even if interpreted as somehow racial in nature – has no relevance to demonstrating that the termination decision was motivated by racial animus.

Next, the fact that Plaintiff received praise for his team's performance on a specific project *a year before* he was put on a performance improvement plan does not suggest that his being placed on the plan was somehow biased. Even underperforming employees often have certain projects or tasks that are successful and deserving of praise. Likewise, the fact that Plaintiff's performance improvement plan had overlapping areas for improvement with the Team 360 Review of the Society does not seem particularly revealing. The alleged overlapping areas were "communication, relationships, and execution," which are extremely broad categories of conduct. Almost any deficient performance, whether by an individual or an organization, could fit under one of those broad categories. The presence of such broad categories on both Plaintiff's plan and the Society's 360 Review seems unremarkable. Additionally, even if there were overlap in the

14

details between the two documents, there is an "obvious explanation" for such overlap – that the CEO believed improvement in Plaintiff's performance would lead to organizational improvement. Regardless, the overlapping broad categories on these two documents in August 2022 do not plausibly suggest that Plaintiff's termination was the product of racial bias.

Likewise, the conversation during the CEO transition in which Gen. Klimp suggested Gen. Ruark terminate Plaintiff's employment does not suggest racial bias either. It is perfectly ordinary during a leadership transition for an outgoing CEO to identify potential personnel issues and recommend future personnel action to the incoming CEO. There is nothing about this alleged event that suggests that either the outgoing or incoming CEOs were motivated by a racial bias.

In addition to the above, Plaintiff also references events that took place in 2017 (six years before his termination) and under different leadership, which primarily involved then-COO Pete Collins' conduct towards Plaintiff. *See* Am. Compl. ¶ 141(c), (f), (g). As an initial point, events so far removed in time have little relevance to establishing racial animus at the time of termination. Additionally, as Plaintiff acknowledges, Collins was, himself, <u>terminated</u> years prior to Plaintiff's termination. *See id.* ¶¶ 35, 40, 41, 42, 149(b). Nothing about Collins' history suggests that Gen. Klimp (or his successor, Gen. Ruark) was motivated by racial animus when deciding to terminate Plaintiff's employment.

In sum, Plaintiff has not put forward sufficient allegations that the termination of his employment was because of his race.

### 4.    *Plaintiff Has Failed to Plead Discriminatory Animus Based on Comparators.*

In an attempt to meet his pleading requirement, Plaintiff appears to claim that he was treated differently than "similarly situated white executives" including Cdr. Dour, Ms. Gonzalez, Adm. Cutler, and Ms. Brownstein. *See id.* ¶ 139(e). But in order to rely on similarly situated comparators, a plaintiff must plead plausible facts demonstrating that the comparators had the

same titles, job responsibilities, and "engaged in the same conduct [as the plaintiff] without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *See, e.g., Guillen v. Esper*, 2020 WL 3965007, at \*11 (E.D. Va. 2020); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd on other grounds*, 566 U.S. 30 (2012).

While Plaintiff was the Chief Information Officer, each of the alleged comparators held vastly different positions– Cdr. Dour was the Chief Administrative Officer, Ms. Gonzalez was the Chief Development and Communications Officer, Adm. Cutler was the Chief Operating Officer, and Ms. Brownstein was HR Director.  None of these positions are remotely the same as the position Plaintiff had with the Society, and Plaintiff has not, and cannot, allege that any of these individuals had the same job responsibilities as he did.  Consequently, they are not comparators. Furthermore, *even if* they had been in similar roles as Plaintiff, he has not alleged that they engaged in similar conduct as he did.  While Plaintiff was found to be failing in communication, maintaining relationships, and executing his IT job responsibilities (*see* Am. Compl. ¶ 105), he alleges entirely different conduct with regard to Cdr. Dour, Ms. Bauer, Ms. Gonzalez, and Ms. Brownstein.  For example, Plaintiff alleges that Cdr. Dour failed to implement an employee "evaluation system." *Id.* ¶ 139(f).  This is not similar to any conduct in which Plaintiff is alleged to have engaged. Similarly, Plaintiff alleges Ms. Gonzalez failed to deliver a "fundraising deliverable"; Adm. Cutler failed to deliver a "strategic business plan"; and Ms. Brownstein oversaw an HR Department that had "documented failures" in 2018 and 2020.  *Id.* ¶ 139(g), (h), (i).

None of these allegations regarding the alleged comparators plausibly suggest racial animus, as there is an "obvious alternative explanation" when employees with a *different* job titles, *different* job responsibilities, and *different* performance issues receive different treatment.

Plaintiff has not plausibly alleged racial animus through his comparator allegations. Because Plaintiff cannot establish his termination was based on racial animus, his discrimination claims in Counts One, Three, and Seven should be dismissed.

**C.     Plaintiff Has Not Stated a Claim for Retaliation under Title VII.**

In Count Nine, Plaintiff alleges a claim for retaliation under Title VII.  To state such a claim, a plaintiff must plead facts that plausibly suggest that "(1) he engaged in a protected activity; (2) his employer then took an adverse employment action against him; and (3) the adverse action was causally connected to the protected activity."  *Mulgrew v. Prince William Cnty. Sch. Bd.*, 2023 WL 7222108, at *2 (E.D. Va. 2023) (Nachmanoff, J.), *aff'd*, 2024 WL 3565531 (4th Cir. 2024).

Although Plaintiff attempts to plead eight separate acts as adverse employment actions, *see* Am. Compl. ¶¶ 245(a)-(h), only those actions that occurred on or after May 23, 2023 are actionable under Title VII because he filed his Charge of Discrimination on March 18, 2024.  *See, e.g.,* 42 U.S.C. § 2000e-5(e)(1).  Plaintiff attempts to justify his inclusion of purported adverse actions before that date by claiming every act was part of a "continuing violation" and therefore, somehow, timely.  *See* Am. Compl. ¶ 244.

This, however, is not the law – retaliation claims are not subject to the continuing violation doctrine.  *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("[E]ach retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice" . . . While Morgan alleged that he suffered from numerous discriminatory and retaliatory acts  . . . only incidents that took place within the timely filing period are actionable."); *Favi v. Virginia State Univ.*, 2020 WL 1698750, at *4 (E.D. Va. 2020) ("[T]he continuing violation doctrine does not apply to her disparate treatment, failure to promote, or retaliation claims."); *Abdelbaki v. N. Virginia Cmty. Coll.*, 2022 WL 811296, at *7 (E.D. Va. 2022).

In light of the undisputed limitations issue, the only purported retaliatory actions asserted in the Amended Complaint that are not barred by the limitations period are: (i) Plaintiff's termination on May 23, 2023; and (ii) the alleged termination of three other employees in November 2024. *See* Am. Compl. ¶¶ 246(e), (f). As explained below, Plaintiff has failed to plead a plausible claim related to either of these actions.

### 1.    *Plaintiff's Termination Is Not Plausibly Connected to Any Protected Activity.*

Under Title VII, protected activity include actions that "oppose" a practice made unlawful by Title VII or where the employee "participated" in a charge or investigation under Title VII. 42 U.S.C. § 2000e-3. To be considered protected activity under the oppositional clause, a plaintiff must demonstrate that (1) he "reasonably believed that the employment action she opposed constituted a Title VII violation"; and (2) his conduct in opposition was reasonable. *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018). Furthermore, a plaintiff's actions must be sufficient to put the employer on notice that he is complaining of a Title VII violation rather than a general employment grievance. *See Harris v. Home Sales Co.*, 2011 WL 826347, at *5 (D. Md. 2011), *aff'd*, 499 F. App'x 285 (4th Cir. 2012).

To the extent a plaintiff can show he engaged in protected activity, he must then demonstrate a "but-for" causal connection between the protected activity and the adverse action. *See Netter*, 908 F.3d at 938. When a large gap of time (many months or years) exists between the activity and the adverse action, it strongly suggests the two are not causally related. *See id*. at 937.

Because of the shotgun nature of Plaintiff's pleading of this claim, it is difficult to discern what protected activity Plaintiff is even claiming caused his termination. *See* Am. Compl. ¶¶ 245(a)-(h). However, because the vast majority of purported "protected activity" pled in the Amended Complaint took place *years* before his termination, *see id.* ¶¶ 245(a)-(e), none of these

acts can plausibly be alleged to be the cause of his termination.  *See Pettis v. Nottoway Cty School Bd.*, 592 F. App'x 158, 160-161 (4th Cir. 2014).

The only two purported activities that are remotely close in time to the termination decision are what Plaintiff labels his "PIP Protest" and "Documentation of Discrimination."  *See id.* ¶¶ 245(f), (g).

Regarding the performance improvement plan, Plaintiff claims that he "questioned the legitimacy of the PIP, asked for time to review the document, and objected to being coerced into signing under threat."  *Id.*  Nothing about this allegation suggests it is the type of activity that would be protected under Title VII.  Plaintiff does not allege he claimed to Gen. Klimp that the performance improvement plan violated Title VII or otherwise asserted his objection had anything to do with race discrimination.  It is not unusual for an employee who is subject to corrective action in the form of a performance improvement plan to "question its legitimacy" or "object" to signing the document.  Those actions do not, on their own, indicate opposition under Title VII.[5]

Likewise, the claim based on the purported activity of "Documentation of Discrimination" fails for much the same reasons.  As best as can be discerned, Plaintiff claims that beginning in August 2022, he kept personal notes of the purported discrimination he faced; that during a coaching session in November 2022, he was advised to stop keeping those notes; and he continued to keep making personal documentation.  *See* Am. Compl. ¶ 245(g).  Because keeping personal notes does not, by itself, constitute an opposition to a violation of law and does not put an employer

---

[5] Furthermore, even if Plaintiff's actions regarding the PIP were protected activity, he has not plausibly alleged that his actions when receiving the PIP caused his termination in May 2023.  In fact, Plaintiff pleads the exact opposite – that Gen. Klimp had already predetermined to terminate Plaintiff in July 2022 over a month before giving him the PIP.  *See* Am. Compl. ¶ 79.  Clearly, if the decision had <u>already been made</u> before Plaintiff even engaged in his "objection," that objection cannot possibly be the but-for cause of his termination.

on notice of any opposition, it is not protected activity.  Moreover, even if the documentation were a protected activity, it cannot be the but-for cause of Plaintiff's termination because it is not alleged that Gen. Klimp was even aware of the documentation.  Furthermore, like the PIP objection, Plaintiff's documentation occurred *after* the time when Plaintiff claims Gen. Klimp had already determined to terminate his employment. Consequently, this claim fails as well.  Plaintiff's Title VII retaliation claim based on his termination must therefore be dismissed.

### 2. *Plaintiff Cannot Base a Retaliation Claim on the Termination of Other Employees.*

Plaintiff's other claim for retaliation is that in November 2024 (18 months after his termination, and 8 months after he filed his Charge) three other employees (Ms. Woods, Ms. Telles, and Mr. Von Zimmer) were terminated purportedly in retaliation for Plaintiff's filing of his Charge.  *See* Am. Compl. ¶ 246(f).  This claim fails for a whole host of reasons.

First, because Plaintiff did not personally suffer an adverse action when others were terminated, he does not have standing to sue for their injuries.  *See Threat v. City of Cleveland, Ohio*, 6 F.4th 672, 681 (6th Cir. 2021) (Title VII "does not permit an individual not aggrieved to sue for someone else's injury."); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (a plaintiff does not have Article III standing unless he suffers concrete harm.)  Although the Supreme Court recognized that third-party retaliation claims are cognizable under Title VII in *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011), it did so in the context where the <u>terminated employee</u> himself, the individual who was actually injured by the employer, brought the action.  In contrast, here, Plaintiff is not the one who suffered the harm from the 2024 terminations, and therefore he is not in a position to assert a claim.

Second, even if Plaintiff had standing, a third-party retaliation claim only exists where there is a close relationship between the employee who engaged in the protected activity and the

20

employee who suffered the harm. *See Thompson*, 562 U.S. at 175. In *Thompson*, the court permitted the claim because the plaintiff was the fiancé of the employee who engaged in protected activity and therefore closely affiliated. Although courts have not set out a bright line of what relationships are sufficient to meet the close relationship test, it is clear that it requires more than being mere acquaintances or fellow "coworkers." *See id.*; *Mackall v. Colvin*, 2015 WL 412922, at *24 (D. Md. 2015); *Fleming v. Norfolk S. Corp.*, 2018 WL 1626523, at *3 (M.D.N.C. 2018). This is true even when coworkers share the same race and the same supervisors. *See Mackall*, 2015 WL 412922 at *24. In the instant case, Plaintiff has not alleged any close relationship between himself and the terminated employees. In fact, the only connection the four individuals seem to share with each other, according to Plaintiff, is that they are all racially not white. As this is clearly insufficient to establish a close relationship, a third-party retaliation claim cannot stand.

Third, Plaintiff has utterly failed to plausibly establish any causal connection between his filing of the Charge and the terminations. As Plaintiff alleges, the terminations took place <u>eight months</u> after he filed his Charge. Am. Compl. ¶ 246(f). The large time gap makes it implausible that the two events are connected. *See Netter*, 908 F.3d at 937. Besides the timing, the only allegation even hinting at a connection between the two events is that *one* of the three terminated employees, Ms. Woods, purportedly claims that she was told she was terminated "because she 'listened to Willie too much' . . . [and] was 'too tied to Willie.'" Am. Compl. ¶ 246(f). But these purported quotes do not indicate that Ms. Woods was terminated because Plaintiff filed his Charge. *At most*, they suggest her termination was influenced by the way she had been trained by Plaintiff to discharge her work responsibilities. Furthermore, Plaintiff fails to provide *any* allegation that Ms. Telles or Mr. Von Zimmer were terminated because of his filing of a Charge. Consequently, Plaintiff's attempt to state a claim for third-party retaliation is without basis.

21

For these reasons, Plaintiff's claim in Count Nine for Title VII retaliation should be dismissed.

**D.**     **Plaintiff Has Not Stated a Claim for Disability Discrimination.**

In Count Five, Plaintiff alleges a claim for disability discrimination under the ADA.  As best as can be discerned, in support of this claim, Plaintiff alleges that he: (i) had a cardiac event on May 4, 2023; (ii) verbally requested leave of absence on May 16, 2023; (iii) requested in writing the same leave of absence on May 22, 2023; (iv) was terminated on May 23, 2023; and (v) requested additional time to consider a separation agreement offered by the Society in June 2023.  Am. Compl. ¶ 191.

Based on these facts, Plaintiff asserts that the Society: (i) failed to engage in the interactive process; (ii) failed to accommodate; and (iii) terminated him based on his disability.  *See id.* ¶ 194.  Each of these claims should be dismissed.

To begin with, the ADA has the same charge requirement and limitations rules as Title VII.  42 U.S.C. § 12117.  Consequently, as with the Title VII claims, Plaintiff is time-barred from asserting claims that occurred prior to May 23, 2023.  Because May 23, 2023 was also the date of Plaintiff's termination, any interactive process or provision of accommodations would have needed to occur *before* that date.  Consequently, the interactive process and pre-termination accommodation claims are time-barred.  *See Tomasello v. Fairfax County*, 2016 WL 165708 (E.D. Va. 2016) (holding that any ADA claim based on alleged failure to provide a reasonable accommodation would need to be filed with the EEOC within 300 days of such failure).

Moreover, to the extent Plaintiff has attempted to assert an accommodation claim based on the alleged failure of the Society to give him additional time to review a proposed separation agreement, that is not a cognizable claim.  First, a plaintiff cannot state a failure to accommodate based on post-termination requests for accommodation.  *See Johnson v. Otter Tail Cnty.*, 2001

WL 664217, at *1 (8th Cir. 2001); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012).  More importantly, a request for additional time to review a separation agreement is not a reasonable accommodation request under the statute.  Under the ADA, a "reasonable accommodation" is one that "enable[s employees] to fulfill the essential duties of their positions." *Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 166 (4th Cir. 2024).  Plaintiff has not alleged (and cannot so allege) that reviewing an agreement, post-termination, whose purpose was to settle his personal claims with the Society was somehow an essential duty of his position.  Consequently, this claim is also subject to dismissal.

Plaintiff's remaining ADA claim is for wrongful discharge.  In order to state such a claim, Plaintiff is required to assert sufficient facts to plausibly allege that "his disability was a 'but-for' cause of his termination."  *Kelly*, 90 F.4th at 169.  Plaintiff has not done so.  Although not announced until May 23, 2023, according to his Amended Complaint, the decision to terminate Plaintiff's employment was made in July 2022– ten months *before* Plaintiff suffered his cardiac event.  *See* Am. Compl. ¶ 79.  Obviously, the July 2022 termination decision could not be influenced by a condition that occurred ten months after the decision was made.  As best as can be discerned, there is not a single allegation in the Amended Complaint that suggests the July 2022 termination decision was influenced in *any way* by a disability Plaintiff may or may not have had at that time.  Plaintiff has not plausibly pled sufficient allegations that his disability was a "but for" cause of that decision.  Consequently, the ADA termination claim must be dismissed as well.

E.    **Plaintiff Has Not Stated a Claim for Violation of the FMLA.**

In Count Six, Plaintiff alleges two claims under the FMLA for retaliation and interference. Both claims should be dismissed.

As best can be discerned, Plaintiff alleges that he sought FMLA leave verbally on May 16, 2023, and in writing on May 22, 2023; the Society failed to provide him with any FMLA paperwork; and he was terminated on May 23, 2023.  Am. Compl. ¶¶ 204-206.

1.    *Plaintiff Has Failed to Allege a Claim for FMLA Retaliation.*

FMLA retaliation claims are subject to the same pleading requirements as Title VII retaliation claims– (1) protected activity; (2) adverse action; and (3) a causal link between the two events.  *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 429 (4th Cir. 2015).  In his retaliation claim, Plaintiff asserts he was terminated because of his FMLA leave requests in May 2023.  Am. Compl. ¶ 210.  But he cannot establish the third element of a causal connection because the decision to terminate was made in July 2022 – ten months before he ever requested FMLA leave.  *Id.* ¶ 79.  Obviously, Plaintiff cannot claim that his FMLA request was the "but-for" cause for his termination when the decision to terminate was made ten months before his FMLA request.  Consequently, the retaliation claim must be dismissed.

2.    *Plaintiff Has Failed to Allege a Claim for FMLA Interference.*

To state a claim for interference, a plaintiff must plead "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm."  *Adams*, 789 F.3d at 427.  As best can be discerned, Plaintiff's interference claim is premised on the assertions that NMCRS interfered by not providing Plaintiff with FMLA paperwork after he requested leave.  Am. Compl. ¶ 205.

First, it is unclear if the FMLA actually requires an employer to provide FMLA paperwork when, at the time the leave is requested, the employer has already predetermined that the employee will be terminated before the FMLA leave can be taken.  *See* 29 CFR § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.").  Given that Plaintiff

24

– according to his own allegations – was already set for termination before the request is made, he was not entitled to any FMLA benefits, and providing him such paperwork would have been misleading.

However, such concerns are largely academic because Plaintiff's claim fails for a more obvious reason – he does not allege facts demonstrating how the failure to provide that paperwork or dialogue caused him harm.  The only harm Plaintiff pleads in his Amended Complaint is that he allegedly collapsed during a rehabilitation session on May 24, 2023 (the day after being told of his termination) because of the "acute stress exacerbated by NMCRS' termination."  *Id.* ¶ 209.  Because, as Plaintiff's own allegations make clear, his collapse was not caused by the Society's failure to provide paperwork, the harm he suffered is not related to the benefits allegedly denied.  Consequently, Plaintiff has not pled an interference claim.

Furthermore, even if Plaintiff had pled the elements of an interference claim, it would still be subject to dismissal as time-barred.  By default, FMLA claims are subject to a two-year statute of limitations, unless the violation is willful, in which case the limitations period is extended to three years.  29 U.S.C. § 2617(c).  Because Plaintiff's original Complaint was filed more than two years after the alleged interference, his claim is only timely if Plaintiff can plausibly plead willfulness.  *See Davis v. Navy Fed. Credit Union*, 2012 WL 948428, at *5 (E.D. Va. 2012), *aff'd*, 474 F. App'x 398 (4th Cir. 2012).  A willful violation occurs "when an employer knew or showed reckless disregard regarding whether its conduct was prohibited."  *Id.*  But as noted above, Plaintiff's own allegations assert that Plaintiff was already set for termination at the time of his request, it is not obvious that he was entitled to any FMLA paperwork.  Even if he was, Plaintiff does not (and cannot) plead that the Society *knew or showed reckless disregard* by not providing Plaintiff with FMLA paperwork, considering it is not clear that such a requirement even exists.

Consequently, Plaintiff has not adequately pled willfulness, and the interference claim is subject to dismissal on timeliness grounds as well.

In summary, Plaintiff's FMLA claims in Count Six should be dismissed.

**F.    Plaintiff's Claims Should Be Dismissed With Prejudice.**

When granting a Motion to Dismiss, the Court has discretion to determine whether a plaintiff will be given leave to amend his pleading. *See United States ex rel. Nicholson v. MedCom Carolinas, Inc*. 42 F.4th 185, 196 (4th Cir. 2022). Where a plaintiff has already been given a chance to amend his claims, it is appropriate to dismiss with prejudice. *See, e.g., Tomov v. Micron Tech. Inc.,* 2024 WL 4806489, at *6, n. 5 (E.D. Va. 2024); *Hall v. Cap. One Fin. Corp*., 2023 WL 2333304, at *8, n. 7 (E.D. Va. 2023).

In this case, Plaintiff has already amended his complaint once and used that opportunity to increase the pleading by two-and-a-half times its original size. It is reasonable to assume, at this point, that Plaintiff has pled all the facts that would support his claims. Given this history, the Court should exercise its discretion and dismiss the claims with prejudice.

## IV. CONCLUSION

For the reasons stated above, each of Plaintiff's claims is flawed and should be dismissed with prejudice.

Dated: December 5, 2025                                    Respectfully submitted,

                                                          */s/ Edward Lee Isler*
                                                          Edward Lee Isler, Va. Bar No. 27985
                                                          Micah E. Ticatch, Va. Bar No. 83351
                                                          John W. H. Harding, Va. Bar No. 87602
                                                          ISLER DARE, P.C.
                                                          1945 Old Gallows Road. Suite 650
                                                          Vienna, Virginia 22182
                                                          Phone: (703) 748-2690
                                                          Facsimile: (703) 748-2695
                                                          Email: eisler@islerdare.com

Email: mticatch@islerdare.com
Email: jharding@islerdare.com

*Counsel for Defendant*
*Navy-Marine Corps Relief Society*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of December 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically sends notification to the following:

Adam Seth Nadelhaft
Charlson Bredehoft Cohen Brown & Nadelhaft PC
11260 Roger Bacon Dr, Suite 201
Reston, VA 20190
703-318-6800
Fax: 703-318-6808
Email: anadelhaft@cbcblaw.com

*Counsel for Plaintiff*
*Willie Williams*

*/s/ Edward Lee Isler*
Edward Lee Isler, Va. Bar No. 27985
ISLER DARE, P.C.

*Counsel for Defendant*
*Navy-Marine Corps Relief Society*