**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| **WILLIE WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cv-01766-MSN-LRV** |
| | ) | |
| **NAVY-MARINE CORPS RELIEF** | ) | |
| **SOCIETY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO DISMISS AMENDED COMPLAINT**

Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
John W. H. Harding, Va. Bar No. 87602
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
Email: eisler@islerdare.com
Email: mticatch@islerdare.com
Email: jharding@islerdare.com

*Counsel for Defendant
Navy-Marine Corps Relief Society*

# TABLE OF CONTENTS

A.    Plaintiff's Hostile Work Environment Claim Should Be Dismissed...................................... 1

    1.    Plaintiff Misstates and Misapplies the Continuing Violation Doctrine. .....................1

    2.    Plaintiff Has Not Alleged the "Hostile Conduct" Was Based on His Race...............3

    3.    Plaintiff Has Not Alleged the "Hostile Conduct" was Severe or Pervasive...................................................................................................................5

B.    Plaintiff's Race Discrimination Claim Should Be Dismissed. ............................................ 7

    1.    The Continuing Violation Doctrine Does Not Apply to His Race Discrimination Claims. ..................................................................................................7

    2.    Plaintiff's Termination Is the Only Actionable Adverse Employment Action..........................................................................................................................8

    3.    Plaintiff's Termination Was Not the Result of Discriminatory Animus. ..................8

    4.    Plaintiff Has Failed to Plead Discriminatory Animus Based on Comparators...........................................................................................................9

C.    Plaintiff's Title VII Retaliation Claim Should Be Dismissed............................................ 11

    1.    Plaintiff Cannot Plausibly Establish a Retaliation Claim Based on the July 2019 Complaint or the October 2020 Objection. ...............................................12

    2.    Plaintiff Cannot Plausibly Establish a Retaliation Claim Based on the "PIP Protest"......................................................................................................13

    3.    Plaintiff Cannot Plausibly Establish a Retaliation Claim Based on the November 2022 Conversation with His Coaching Consultant...............................14

D.    Plaintiff's FMLA Claims Should Be Dismissed............................................................ 15

    1.    Plaintiff's FMLA Retaliation Claim Fails Because the Decision to Terminate Predates the Request for FMLA Leave. ................................................15

    2.    Plaintiff's FMLA Interference Claim Should Be Dismissed....................................16

E.    Plaintiff's ADA Claims Should Be Dismissed. ............................................................ 17

F.    Dismissal of the Claims Should Be With Prejudice. ...................................................... 18

# TABLE OF AUTHORITIES

*Adams v. Home Depot USA, Inc.*,
2007 WL 4565163 (D. Or. 2007) ....................................................................................... 1, 5

*Adkins v. CSX Transportation, Inc.*,
70 F.4th 785 (4th Cir. 2023) ................................................................................................ 16

*Akerman v. Austin*,
2022 WL 16700382 (E.D. Va. 2022) ..................................................................................... 7

*AMBIMJB, LLC v. Strategic Armory Corps, LLC*,
2021 WL 949376 (D. Md. 2021) ......................................................................................... 10

*Angelico v. Lehigh Valley Hosp., Inc.*,
1996 WL 524112 (E.D. Pa. 1996) ....................................................................................... 10

*Aquila v. SREIT Broad Vista Terrace LLC*,
2023 WL 8357952 (E.D. Va. 2023) ..................................................................................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................... 4

*Bland v. Fairfax Cnty.*,
2011 WL 1660630 (E.D. Va. 2011) ....................................................................................... 6

*Bowman v. United Way Worldwide*,
2025 WL 51478 (E.D. Va. 2025) ........................................................................................... 2

*Burke v. CHS Middle E., LLC*,
2019 WL 459022 (E.D. Va. 2019) ......................................................................................... 2

*Carroll v. Amazon Data Servs., Inc.*,
2022 WL 3161895 (E.D. Va. 2022) ....................................................................................... 6

*Coleman v. Maryland Court of Appeals*,
626 F.3d 187 (4th Cir. 2010) ............................................................................................... 10

*Couch v. City of Virginia Beach*,
768 F. Supp. 3d 741 (E.D. Va. 2025) ..................................................................................... 5

*Gooding-Williams v. Fairfax Cnty. Sch. Bd.*,
2019 WL 3268831 (E.D. Va. 2019) ....................................................................................... 6

*Grimes v. Dep't of Def.*,
2025 WL 1334054 (E.D. Va. 2025) ....................................................................................... 8

*Guessous v. Fairview Property*,
828 F.3d 208 (4th Cir. 2016) ............................................................................................ 2, 3

*Guillen v. Esper*,
   2020 WL 3965007 (E.D. Va. 2020) ..................................................................... 10

*Harris v. Home Sales Co.*,
   2011 WL 826347 (D. Md. 2011) ......................................................................... 13

*Harris v. Maryland Coal. of Fams., Inc.*,
   2024 WL 1721071 (D. Md. 2024) ........................................................... 14, 15, 17

*Haywood v. Locke*,
   387 F. App'x 355 (4th Cir. 2010) ........................................................................ 10

*Hector v. Wolf*,
   2020 WL 7265848 (E.D. Va. 2020) ....................................................................... 2

*High v. Wells Fargo Bank*,
   2023 WL 2505540 (E.D. Va. 2023) ....................................................................... 5

*Jensen-Graf v. Chesapeake Employers' Ins. Co.*,
   616 F. App'x 596 (4th Cir. 2015) .......................................................................... 8

*Jones v. Constellation Energy Projects & Servs. Grp., Inc.*,
   629 F. App'x 466 (4th Cir. 2015) .......................................................................... 8

*Karnes v. Midland Credit Mgmt.*,
   2025 WL 906793  (W.D. Va. 2025) ................................................................. 16, 17

*Kelly v. Town of Abingdon, Virginia*,
   90 F.4th 158 (4th Cir. 2024) ............................................................................... 18

*Kinnett v. Key W + Sotera Def.*,
   *Sols.*, 2019 WL 4018347 (W.D. Va. 2019) .......................................................... 13

*Kunio Tsutsumi v. Advanced Power Techs., Inc.*,
   2013 WL 1953716 (D. Nev. 2013) ....................................................................... 10

*Leonard v. Tenet*,
   2004 WL 3688406 (E.D. Va. 2004) ........................................................................ 6

*McCarty v. City of Alexandria*, 2024 WL 5081956 (E.D. Va. 2024) ................................. 1, 10, 11

*McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*,
   780 F.3d 582 (4th Cir. 2015) ................................................................................. 9

*Mustafa v. Iancu*,
   313 F. Supp. 3d 684 (E.D. Va. 2018) ..................................................................... 2

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) .............................................................................................. 7

*Nixon v. Kysela Pere et Fils, Ltd.*,
  2024 WL 3666166 (4th Cir. 2024) ........................................................ 5

*Ragsdale v. Wolverine World Wide, Inc.*,
  535 U.S. 81 (2002) ................................................................................ 16

*Ruffin v. Anthem, Inc.*,
  2022 WL 4451328 (E.D. Va. 2022) .................................................... 2, 3

*Seabrook v. Driscoll*,
  148 F.4th 264 (4th Cir. 2025) ....................................... 3, 6, 16, 18

*Sorto v. AutoZone, Inc.*,
  821 F. App'x 188 (4th Cir. 2020) .......................................................... 4

*Spassova-Nikolova v. Rollins*,
  2025 WL 817865 (E.D. Va. 2025) ........................................................ 5

*United States ex rel. Nicholson v. MedCom Carolinas, Inc.*,
  42 F.4th 185 (4th Cir. 2022) ............................................................... 18

*Weston v. Austin*,
  2024 WL 4336730 (E.D. Va. 2024) ...................................................... 5

*Williams v. Giant Food Inc.*,
  370 F.3d 423 (4th Cir. 2004) ........................................................... 1, 7

*Wright v. Sw. Airlines Co.*,
  2008 WL 4104180 (D. Md. 2008) ............................................... 15, 17

In its Memorandum in Support of its Motion to Dismiss (Dkt. 11) ("Supporting Brief" or "Supp. Brief"), Navy-Marine Corps Relief Society (the "Society") established that each of the claims in Plaintiff's Amended Complaint (Dkt. 9) should be dismissed with prejudice. Plaintiff's Opposition (Dkt. 17) ("Opposition" or "Opp.") fails to adequately rebut the arguments made in the Supporting Brief. The Opposition is particularly unpersuasive because much of it relies on misstatements of law,[1] misstatements of Plaintiff's own allegations,[2] and exaggerated rhetoric.[3]

For the reasons explained more fully below, Plaintiff's Amended Complaint should be dismissed with prejudice.

A. **Plaintiff's Hostile Work Environment Claim Should Be Dismissed.**

 1. ***Plaintiff Misstates and Misapplies the Continuing Violation Doctrine.***

In his Opposition, Plaintiff argues that the continuing violation doctrine allows him to incorporate each of his allegations of "hostile" conduct going back to 2017 into his hostile environment claims. *See* Opp. at 7-9. Plaintiff's assertion is legally flawed.

As previously noted, the continuing violation doctrine only permits the incorporation of

---

[1] As discussed *infra*, Plaintiff, among other things: (i) misstates the law regarding the continuing violation doctrine by failing to mention binding Fourth Circuit precedent *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004); (ii) incorrectly summarizes the decision in *Adams v. Home Depot USA, Inc*., 2007 WL 4565163, at *17 (D. Or. 2007); and (iii) improperly cites the case of *McCarty v. City of Alexandria*, 2024 WL 5081956, at *5 (E.D. Va. 2024) where it has no connection to the issues at hand.

[2] Among other things, the Opposition repeatedly: (i) cites ¶ 47 for the proposition that Plaintiff lost "security access" – despite that Paragraph saying nothing of the kind; (ii) cites ¶ 54 (in support of his race claims) for the removal of salary-setting authority, despite having acknowledged in that Paragraph that the removal of authority was the result of Plaintiff's actions unrelated to race; and (iii) cites ¶ 56 for the proposition that the proposed bylaw would "demote" Plaintiff, even though the pleading actually states it only would have limited his ability to become acting CEO of the Society. *See* Opp. at 2-3, 6.

[3] For example, Plaintiff refers to the phrase "crack the whip" as a "racial epithet" at least seven times in his Opposition. As noted, "crack the whip" is an ordinary phrase to which Plaintiff has subjectively ascribed racial overtones. It is not a racial epithet.

otherwise time-barred allegations when the untimely "incidents involve the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers" as the acts that occurred within the statutory period. *Ruffin v. Anthem, Inc*., 2022 WL 4451328, at *5 (E.D. Va. 2022), *aff'd*, 2023 WL 4181281 (4th Cir. 2023); *see also, e.g., Mustafa v. Iancu*, 313 F. Supp. 3d 684, 693 (E.D. Va. 2018); *Bowman v. United Way Worldwide*, 2025 WL 51478, at *4 (E.D. Va. 2025); *Hector v. Wolf*, 2020 WL 7265848, at *6 (E.D. Va. 2020); *Burke v. CHS Middle E., LLC*, 2019 WL 459022, at *5 (E.D. Va. 2019). Although this standard was stated in the Supporting Brief (Dkt. 11 at 6-7), Plaintiff's Opposition neither acknowledges the standard nor attempts to show how the time-barred events could meet this requirement. *See* Opp. at 7-9.

Regarding the Section 1981 claim, the alleged pre-October 2021 acts do not involve the same type of actions or the same managers as the acts pled in 2022-2023. As previously noted, the allegations that a former executive, Collins, made derogatory remarks or targeted Plaintiff in 2017-2018 cannot possibly be connected to the post-October 2021 events because <u>Collins was terminated</u> in February 2020, meaning the "same managers" standard cannot possibly be met. *See* Am. Compl. ¶¶ 149(b). Similarly, isolated pre-2021 conduct, such as the Society's consideration (but non-adoption) of a bylaw that would have required military service to become the Society's CEO, is not the "same type of action" or "frequent" enough to be linked. *Id.* ¶¶ 149(e), 56. Additionally, the alleged pre-October 2021 conduct of Plaintiff not being specifically thanked in meetings occurred only twice before the statutory period began and is, therefore, also not adequately connected to post-October 2021 conduct. *Id.* ¶¶ 149(e), 60.

With regard to the claims under Title VII and VHRA, those claims are even more restricted by limitations issues. As the parties agree, the only event that is within the limitations period of these statutes is the Plaintiff's termination. *See* Opp. at 8. Plaintiff cites at length to *Guessous v.*

*Fairview Property*, 828 F.3d 208 (4th Cir. 2016) for the alleged proposition that a termination can be part of a hostile environment and can be used as an anchor to bring in pre-limitations events to the claim.  *See* Opp. at 8-9.  But *Guessous* is not particularly analogous to the instant case.  There, the plaintiff filed her charge only four days after her termination, meaning there were 296 days of the alleged hostile environment that were within the limitations period for the court to consider in addition to the termination, before the court determined that some pre-limitations conduct could also be considered.  *See Guessous,* 828 F.3d at 215.  In contrast, in this case, the *only* conduct within the limitations period is the termination itself.  Furthermore, there, a single supervisor was the perpetrator of all the alleged hostile conduct, both pre- and post-limitation period.  *See id.* at 211-215.  In contrast, here, the decisionmaker of the termination, Gen. Ruark, was not even employed with the Society when the pre-limitations period conduct purportedly occurred.

The better analogue is the previously cited case of *Ruffin* (which Plaintiff completely ignored), where the plaintiff tried to bring in numerous racial comments made pre-limitations period through the "anchor" of the plaintiff's termination.  2022 WL 4451328 at *6.  The Court rejected the plaintiff's request because, among other things, "Plaintiff's termination is a type of employment action that is different from Quist's alleged comments about race."  *Id.*  Likewise, in the instant case, none of the alleged pre-limitations conduct is the same type of employment action as the termination and therefore cannot be brought into the claims.  Because a termination, on its own, is not sufficient to state a claim for hostile environment, the Title VII and VHRA hostile work environment claims should be dismissed on time-bar grounds alone.

### 2.    *Plaintiff Has Not Alleged the "Hostile Conduct" Was Based on His Race.*

To plead the second element of a hostile environment claim, Plaintiff was required to allege sufficient facts to demonstrate that he "would not have experienced the harassment 'but for'" his race.  *Seabrook v. Driscoll*, 148 F.4th 264, 271 (4th Cir. 2025).  In the Supporting Brief, the Society

addressed each of the alleged events that make up the hostile environment claim and demonstrated that none was plausibly alleged to meet this standard. As best as can be discerned, Plaintiff neither challenges the standard nor directly explains how any of the underlying conduct could meet that standard – opting instead to simply summarize each of the allegations again.

For example, in the Supporting Brief, the Society noted that Plaintiff's alleged loss of authority to set salaries and hiring terms could not possibly be due to his race, because Plaintiff himself *specifically pled* the authority was taken away because he had "formally protested" a "two-year salary freeze imposed on a new IT director," rather than because of Plaintiff's race. Supp. Brief at 7-8 (citing Am. Compl. ¶ 54). Thus, in no way could this normal workplace action plausibly support a racial hostile environment claim. Yet, Plaintiff continues to cite this allegation to support his claims without further explanation. *See* Opp. at 10.

The only allegation Plaintiff substantively addresses in his brief is his assertion that Adm. Cutler purportedly said (outside the presence of Plaintiff) that "someone needed to crack the whip on [Williams]." As the Society previously noted, that phrase is not inherently a race-based statement, and Plaintiff's subjective interpretation does not make it so. *See Sorto v. AutoZone, Inc.*, 821 F. App'x 188, 192 (4th Cir. 2020). In response, Plaintiff argues that "even race-neutral comments can be 'probative of bias'" and "context matters". Opp. at 9-10. But that is precisely the issue – Plaintiff has *not* alleged *any* context beyond Plaintiff being black that would suggest Adm. Cutler's use of the ordinary phrase was racially motivated. *See* Am. Compl. ¶ 74. Rather, Plaintiff simply alleges a partial quote of a sentence and, without more, asserts racism. *See id.* That is neither sufficient nor proper. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009). Plaintiff was required to allege sufficient facts to plausibly demonstrate that Adm. Cutler would not have used the same phrase if Plaintiff had been a different race. Plaintiff has not remotely

4

done so.[4]

### 3.     *Plaintiff Has Not Alleged the "Hostile Conduct" was Severe or Pervasive.*

In its Supporting Brief, the Society demonstrated that Plaintiff could also not meet the third

prong to show severe or pervasive conduct.  Supp. Brief at 9-10.  In doing so, the Society correctly

identified the standard (with citations) that "a plaintiff must clear a high bar and allege sufficient

facts plausibly demonstrating that the workplace was permeated with discriminatory intimidation,

ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's]

employment and create an abusive working environment."  *Id.* (citing *High v. Wells Fargo Bank*,

2023 WL 2505540, at *8 (E.D. Va. 2023)).

Strangely, in his Opposition, Plaintiff asserts that this "high bar" standard is not applicable

on a motion to dismiss and is instead reserved for summary judgment.  *See* Opp. at 12.  Plaintiff

is, without a doubt, mistaken as to the law.  *See, e.g., Nixon v. Kysela Pere et Fils, Ltd.,* 2024 WL

3666166, at *4 (4th Cir. 2024) (stating a plaintiff "must clear a high bar in order to satisfy the

severe or pervasive test" on a motion to dismiss); *Weston v. Austin*, 2024 WL 4336730, at *6 (E.D.

Va. 2024) (Nachmanoff, J.) (same); *High*, 2023 WL 2505540, at *8 (same); *Spassova-Nikolova v.

Rollins*, 2025 WL 817865, at *4 (E.D. Va. 2025) (same); *Couch v. City of Virginia Beach*, 768 F.

---

[4] In his brief, Plaintiff cites only to a case from far outside of the Fourth Circuit, *Adams v. Home Depot USA, Inc*., 2007 WL 4565163, at *17 (D. Or. 2007) and summarizes the holding in parenthetical as "Title VII claim survived summary judgment where 'cracking the whip' was, in context, a racist comment."  This is not accurate.  In *Adams*, the individual said, "Get your ass moving or I'm going to crack the whip." The court did *not* come to the conclusion that this comment was "racist"; rather that court observed that the expression on its face does *not* constitute direct evidence of discrimination because it required an "additional step to infer a racial slur."  That court also noted: "Depending on the context, the reference to cracking a whip could be considered an innocent expression to motivate a person to action or, alternatively, as a reference to slavery." In that case, the court found it was not required to engage in that analysis of that statement because other comments directed toward the plaintiff (such as calling him "Darkman" and a "monkey") were clearly racially derogatory.  *See id.*

Supp. 3d 741, 752 (E.D. Va. 2025) (same).

Plaintiff's desperate attempt to fight the standard for establishing severe or pervasive conduct reflects the reality that his Amended Complaint does not come close to meeting the high bar necessary to state the claim. As previously noted, among other things: (i) none of the conduct alleged is "objectively abusive, humiliating, or physically threatening" (*Seabrook*, 148 F.4th at 272); (ii) the alleged conduct is not "frequent," as it involves a handful of unconnected events over a six-year period (*Leonard v. Tenet*, 2004 WL 3688406, at *9 (E.D. Va. 2004)); and (iii) the alleged conduct is the type of regular workplace conduct that courts have found insufficient to meet the severe or pervasive test. *See, e.g., Carroll v. Amazon Data Servs., Inc.*, 2022 WL 3161895, at *6 (E.D. Va. 2022) (allegations of increased criticisms, unfavorable assignments, and unjustified PIP not sufficient to show severe or pervasive conduct); *Gooding-Williams v. Fairfax Cnty. Sch. Bd.*, 2019 WL 3268831, at *6 (E.D. Va. 2019) *aff'd*, 825 F. App'x 147 (4th Cir. 2020) (no severe or pervasive conduct when plaintiff alleged supervisors of "closely monitoring her conduct and activities, criticizing her performance, putting her on a PIP, reassigning her job duties, revoking her telework privileges, and changing her schedule.").

In response, Plaintiff argues that the case *Bland v. Fairfax Cnty.*, 2011 WL 1660630 (E.D. Va. 2011) somehow supports his position that he has sufficiently pled severe or pervasive conduct in this case. It does not. *Bland* was a sexual harassment case in which the court found that the plaintiff was subjected to repeated conduct that was severe based on nine incidents over six years, including asking the plaintiff if she "enjoy[ed] having sex with more than one partner," if she "like[d] to be watched while you masturbate", as well as being forced to visit a sex-toy shop. *Id.* at *13. The conduct alleged in the Amended Complaint is not remotely on par with the egregious conduct to which the plaintiff in *Bland* was subjected.

In the end, much of Plaintiff's allegations that make up the hostile environment claim are time-barred. Of those allegations that are not, they are insufficiently race-based to state a claim. To the extent there is *any* alleged race-based conduct that was not time-barred, the claim would still fail because such remaining conduct is not sufficiently severe or pervasive to overcome the necessary "high bar." For all these reasons, Counts Two, Four, and Eight should be dismissed.

**B.    Plaintiff's Race Discrimination Claim Should Be Dismissed.**

### 1. *The Continuing Violation Doctrine Does Not Apply to His Race Discrimination Claims.*

As best as can be discerned, in his Opposition, Plaintiff begins his discussion on the race discrimination claims by suggesting the continuing violation doctrine is applicable to these claims. *See* Opp. at 14; *see also* Am. Comp. ¶ 162. This is a misstatement of the law.

The Supreme Court made clear that the continuing violation doctrine does not apply to these types of claims and, instead, only applies to workplace harassment/hostile work environment claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

Plaintiff, who is aware of this authority, cites to Footnote 9 of the *Morgan* decision in which the Supreme Court took no position on whether the continuing violation doctrine applied to "pattern-or-practice" claims. *See* Opp. at 14. But that footnote has little relevance to the instant case, as Plaintiff has not asserted a pattern-or-practice claim, and individuals are precluded from bringing such claims outside of the class action context. *See, e.g., Akerman v. Austin,* 2022 WL 16700382, at *8 (E.D. Va. 2022), *aff'd*, 2023 WL 5561258 (4th Cir. 2023). More importantly, the very same argument that Plaintiff attempts to make – that *Morgan* Footnote 9 allows a plaintiff to use the continuing violation doctrine in a non-hostile environment claim simply by claiming a "pattern" of conduct— was <u>considered and rejected</u> by the Fourth Circuit over *two decades* ago. *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004). Plaintiff fails to cite this case, let

alone explain how it could possibly not apply to his claims.  In sum, Plaintiff's suggestion that the continuing violation doctrine has applicability to these claims is devoid of merit.

> ### 2.    *Plaintiff's Termination Is the Only Actionable Adverse Employment Action.*

In the Supporting Brief, the Society demonstrated that the only actionable adverse employment action was Plaintiff's termination of employment.  Supp. Brief 11-12.  Plaintiff appears to disagree (*see* Opp. at 15), but his basis for doing so remains unclear.

To begin with, other than the termination, all events occurred outside of the limitations period for Title VII and the VHRA, rendering it impossible for there to be any other adverse action for those claims.  Moreover, even under Section 1981, there seems to be no other adverse action that is not otherwise time-barred.  As previously noted, neither the PIP nor the Society's alleged recruiting efforts altered the terms or conditions of Plaintiff's employment.  *See, e.g., Jensen-Graf v. Chesapeake Employers' Ins. Co*., 616 F. App'x 596, 598 (4th Cir. 2015); *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015); *Grimes v. Dep't of Def.*, 2025 WL 1334054, at \*3 (E.D. Va. 2025).  Although Plaintiff asserts the contrary, he provides no legal argument for this assertion.  *See* Opp. at 15.  Consequently, that meritless assertion should be disregarded by the Court – the only actionable adverse action plausibly alleged is the termination.[5]

> ### 3.    *Plaintiff's Termination Was Not the Result of Discriminatory Animus.*

To adequately state a claim for discriminatory termination, Plaintiff must allege facts that plausibly suggest the termination was <u>because of</u> his race, as well as sufficient facts to overcome

---

[5] As best as can be discerned, the Opposition may also be suggesting that an additional adverse action was Plaintiff having to endure the alleged "crack the whip" comment. *See* Opp. at 15. To the extent that is what Plaintiff is arguing, such an assertion is clearly meritless. *See, e.g., Grimes*, 2025 WL 1334054 at \*3 (holding rude comments and ignored complaints are not adverse actions).

the "obvious alternative explanation" that the decisionmaker acted for ordinary business reasons but rather acted with a discriminatory mind.  *E.g., McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 588 (4th Cir. 2015).

In the Supporting Brief, the Society observed the Amended Complaint's assertion that the plan to terminate Plaintiff initially arose in September 2020, when then-CEO Gen. Klimp circulated a memorandum proposing to terminate Plaintiff in retaliation for Plaintiff's opposition to imposing a two-year salary freeze on a new IT director, rather than racial bias.  Am. Compl. ¶¶ 54-55.  Plaintiff further alleges that in July 2022, Gen. Klimp made the decision to terminate Plaintiff's employment.  *Id.* ¶ 79.  Plaintiff does not allege any plausible basis for suggesting this alleged decision by Gen. Klimp was the product of racial bias rather than Plaintiff's ongoing poor performance.  Similarly, in August 2022, Gen. Klimp put Plaintiff on the performance improvement plan, which Plaintiff suggests was in retaliation for his taking FMLA leave to care for his wife, rather than racial bias.  *See id.* ¶ 86; *see also* Dkt. 1, ¶ 45.  In October 2022, Gen. Klimp was replaced as CEO by Gen. Ruark, and, according to the Amended Complaint, during the transition, the "plan to terminate" was "finalized" in October 2022.  Am. Compl. ¶ 109.  Seven months later, on May 23, 2023, Gen. Ruark notified Plaintiff that his employment was terminated. *Id.* ¶ 58.  Again, there is nothing in the Amended Complaint plausibly suggesting that either CEO was motivated by racial animus.  Despite this being thoroughly discussed in the Supporting Brief at 12-13, Plaintiff's Opposition does not point to any alleged facts that would suggest differently. Because Plaintiff asserts no facts to suggest either CEO was plausibly motivated by racial animus, Plaintiff's discriminatory termination claim must be dismissed.

### 4.    *Plaintiff Has Failed to Plead Discriminatory Animus Based on Comparators.*

In the Supporting Brief, the Society noted that Plaintiff had also failed to plead discriminatory animus based on comparators.  Supp. Brief at 15-17.  As best as can be discerned,

Plaintiff's response to this argument is as follows:

> Finally, the Society argues that Mr. Williams cannot infer animus by comparing his treatment to other employees. There is no authority for this. In fact, "[t]he treatment of others . . . may assist in demonstrating that a work environment was objectively hostile." *McCarty v. City of Alexandria*, 2024 U.S. Dist. LEXIS 224544, at *12 (E.D. Va. Dec. 11, 2024).

Opp. at 17. In these three sentences, Plaintiff manages to both misstate the Society's argument and the law.

In fact, the Society *did not* somehow argue that allegations of differential treatment of comparators can never be used to establish discriminatory animus. Rather, the Society <u>correctly noted</u> that, "in order to rely on similarly situated comparators, a plaintiff must plead plausible facts demonstrating that the comparators had the same titles, job responsibilities, and 'engaged in the same conduct [as the plaintiff] without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Supporting Brief at 15-16 (citing *Guillen v. Esper*, 2020 WL 3965007, at *11 (E.D. Va. 2020); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd on other grounds*, 566 U.S. 30 (2012)).

The Society also noted that Plaintiff had not pled any such comparators in his Amended Complaint. *Id.* at 16-17. The *McCarty* case does not in any way rebut the legal principle stated above, and Plaintiff's citation to it is completely inapposite. Removing Plaintiff's inappropriate ellipsis,[6] the quoted sentence reads in full:

---

[6] Ellipses are appropriate to make a quotation shorter without changing the meaning. *See, e.g., Angelico v. Lehigh Valley Hosp., Inc.*, 1996 WL 524112, at *4 (E.D. Pa. 1996); *AMBIMJB, LLC v. Strategic Armory Corps, LLC*, 2021 WL 949376, at *4, FNs 3, 4 (D. Md. 2021); *Kunio Tsutsumi v. Advanced Power Techs., Inc.*, 2013 WL 1953716, at *7 (D. Nev. 2013). Whatever point Plaintiff was trying to make by quoting *McCarty*, the modified version of the quote with ellipses seems to have a different meaning than the original.

> Although the treatment of others may inform a hostile work environment claim and may assist in demonstrating that a work environment was objectively hostile, a plaintiff must still establish that she suffered from a work environment that changed her terms and conditions of employment.

*McCarty v. City of Alexandria*, 2024 WL 5081956, at *5 (E.D. Va. 2024).  As should be clear from that language, the court in *McCarty* was analyzing when treatment of others can be used to support a *hostile work environment* claim.  The case has <u>no connection</u> whatsoever to the issue of when <u>comparator</u> evidence is sufficient to establish racial animus in a disparate treatment case.

Plaintiff does not cite any other authority in this portion of his argument that would suggest the standard cited by the Society was incorrect (because it is not).  Plaintiff also does not cite any allegations in the Amended Complaint that would suggest there was any comparator with the same titles and job responsibilities, and who had engaged in the same conduct as Plaintiff because, again, no such person existed.  Consequently, as stated in the Supporting Brief, Plaintiff cannot rely on comparator evidence to establish racial animus.

Because Plaintiff cannot establish that his termination was based on racial animus, his discrimination claims in Counts One, Three, and Seven should be dismissed.

## C.    <u>Plaintiff's Title VII Retaliation Claim Should Be Dismissed.</u>

In his Opposition, Plaintiff properly concedes that, notwithstanding his statements in the Amended Complaint to the contrary, the continuing violation doctrine does not apply to his retaliation claim.  *See* Opp. at 18, FN 2.  Consequently, the parties appear to be in agreement that the only adverse action relevant to this claim was Plaintiff's termination.  Plaintiff also clarifies that his retaliation claim is premised on four purported protected activities: (i) the July 17, 2019 complaint against Collins (Am. Compl. ¶ 38); (ii) the objection to the proposed bylaw amendment in October 2020 (*id.* ¶ 57); (iii) Plaintiff's "PIP protest" in August 2022 (*id.* ¶ 245(f)); and (iv) Plaintiff's interaction with his executive coach in November 2022 (*id.* ¶ 99).  *See* Opp. at 18.

1. ***Plaintiff Cannot Plausibly Establish a Retaliation Claim Based on the July 2019 Complaint or the October 2020 Objection.***

Among other things, to state a retaliation claim, Plaintiff must plead sufficient facts to plausibly establish that, "but for [plaintiff's] participation in [the] protected activity," he would not have been terminated. *See, e.g., Aquila v. SREIT Broad Vista Terrace LLC*, 2023 WL 8357952, at *4 (E.D. Va. 2023), *aff'd*, 2024 WL 4799470 (4th Cir. 2024). Plaintiff clearly does not meet this standard as to either the July 2019 complaint or the October 2020 objection.

Regarding the former, Plaintiff alleges that he engaged in protected activity when he complained that Collins had created a toxic environment in July 2019. Am. Compl. ¶ 38. Shortly after the complaint, the CEO of the Society was replaced by Gen. Klimp, and Collins was terminated. *See id.* ¶¶ 40-42. The Society then engaged in a legal battle with Collins, where the Society seemingly endorsed the substance of Plaintiff's July 2019 complaint and openly stated that Collins' treatment of the Plaintiff was inappropriate. *See id.* Over three years later, and after another change in leadership, where Gen. Ruark took over the CEO position, the decision to terminate Plaintiff was finalized. *See id.* ¶ 109. The three-year gap is enough, on its own, to suggest implausibility. However, that gap, combined with the fact that the Society accepted and acted on Plaintiff's complaint and then changed leadership *multiple times* before Gen. Ruark decided to terminate Plaintiff's employment, renders it implausible that the July 2019 complaint was the "but-for" cause of his termination.

Likewise, it is equally implausible that Plaintiff's October 2020 objection to a proposed bylaw was the "but-for" cause of his termination. Ultimately, the Society rejected the proposal. *See* Am. Compl. ¶ 58. Thereafter, *two full* years passed, and a new CEO came in before the decision to terminate Plaintiff was finalized. It is simply not plausible that Gen. Ruark was influenced at all in making his decision to terminate in October 2022 by the fact that two years

earlier Plaintiff had objected to a proposed-but-not-enacted bylaw amendment that would have required the CEO to have a military background.  Plaintiff certainly has not established that his October 2020 objection was so influential as to be a but-for cause of his termination.

Thus, Plaintiff cannot state a claim for retaliation on the basis of either the July 2019 complaint or the October 2020 objection.

### 2. *Plaintiff Cannot Plausibly Establish a Retaliation Claim Based on the "PIP Protest".*

As previously noted, to constitute protected activity, among other things, a plaintiff must put the employer on notice that he is complaining about a Title VII violation rather than a general employment grievance.  *See Kinnett v. Key W + Sotera Def. Sols.*, 2019 WL 4018347, at *8 (W.D. Va. 2019), *aff'd*, 798 F. App'x 765 (4th Cir. 2020); *Harris v. Home Sales Co.*, 2011 WL 826347, at *5 (D. Md. 2011), *aff'd*, 499 F. App'x 285 (4th Cir. 2012).

Regarding the "PIP Protest," the only allegation is located in Paragraph 245(f) and states, in its entirety:

> August 23, 2022 PIP Protest: During the August 23, 2022 PIP meeting, Mr. Williams questioned the legitimacy of the PIP, asked for time to review the document, and objected to being coerced into signing under threat. This opposition to pretextual discipline constitutes protected activity.

Notwithstanding the conclusory sentence at the end of the paragraph, nothing about this allegation suggests the communication is protected under Title VII.  Plaintiff does not allege he claimed to Gen. Klimp that the performance improvement plan was racially motivated or somehow violated Title VII.  It is not unusual for an employee who is subject to corrective action in the form of a performance improvement plan to "question its legitimacy" or "object" to signing the document.  Those actions do not, on their own, indicate opposition under Title VII.

In response to this argument, Plaintiff asserts that the "inference" of the above allegation should be "he was objecting to the fact the PIP was a pretextual means to target the only Black

13

executive." Opp. at 19. First, that is not a reasonable inference from the allegation actually pled. Moreover, the issue is not what Plaintiff now claims was the basis for his objection, but, rather, it is what he *communicated* to Gen. Klimp. He has not alleged a *communication* that would put the Society on notice that he was engaging in protected activity. Consequently, the activity is not protected and cannot be the basis of a retaliation claim.

Furthermore, *even if* it were protected activity, Plaintiff himself has alleged that the Society had already made the decision to terminate *before* the "PIP Protest" occurred (*see* Am. Compl. ¶ 79). Consequently, it cannot logically be the but-for cause of his termination. *See, e.g., Harris v. Maryland Coal. of Fams., Inc.*, 2024 WL 1721071, at *7 (D. Md. 2024).

### 3.    *Plaintiff Cannot Plausibly Establish a Retaliation Claim Based on the November 2022 Conversation with His Coaching Consultant.*

The November 2022 activity appears to be an allegation that Plaintiff kept personal documentation of purported discrimination and was told by his coaching consultant to "stop documenting things." *See* Am. Compl. ¶ 99. Putting aside that it is unclear the nature of the "things" to which the coaching consultant was referring, it is not clear how that constitutes protected activity as it does not describe any act on the part of Plaintiff.

More importantly, even if the November 2022 conversation did constitute protected activity, it <u>cannot</u> be the but-for cause of Plaintiff's termination because it occurred <u>after</u> his termination had already been decided in July 2022 and had been finalized in October 2022. *See* Am. Compl. ¶¶ 79, 109. Plaintiff offers no response to this argument in his Opposition — because there is none. Consequently, the claim based on this activity fails as well.

Because none of the four claimed "protected activities" can support the retaliation claim, Plaintiff's claim in Count Nine for Title VII retaliation should be dismissed.

**D.**    **Plaintiff's FMLA Claims Should Be Dismissed.**

*1.*    *Plaintiff's FMLA Retaliation Claim Fails Because the Decision to Terminate Predates the Request for FMLA Leave.*

As noted in the Supporting Brief, Plaintiff's FMLA retaliation claim cannot go forward because Plaintiff's alleged request for FMLA leave (in May 2023) came *after* the Society had already made the decision to terminate in July 2022 and then finalized that decision in October 2022.  Supp. Brief at 24.  As a matter of logic, the FMLA request could not be the but-for cause of the termination if the request for FMLA came *after* the decision to terminate was finalized.

In response, Plaintiff argues that "even though Mr. Williams alleges that the Society had a premeditated plan to terminate him, a reasonable inference is that the Society timed the termination to take place in May 2023 so that it could avoid paying for Mr. Williams's FMLA leave."  Opp. at 24 (emphasis added).  This is not a reasonable inference.  Plaintiff has not pointed to any allegation in the Amended Complaint that supports this supposed "inference," nor does it make logical sense— as the FMLA only requires *unpaid* leave.

Plaintiff's Opposition acknowledges that courts "have determined that an employer's premeditated decision to terminate the plaintiff can undercut an FMLA claim," where employers "made the termination decision 'without knowledge of the FMLA request.'"  *Id.* at 24-25 (citing *Wright v. Sw. Airlines Co*., 2008 WL 4104180, at *5 (D. Md. 2008), *aff'd*, 319 F. App'x 232 (4th Cir. 2009)).  As a matter of logic, when the decision to terminate predates the request for FMLA leave, a retaliation claim cannot survive.  *See, e.g., Harris*, 2024 WL 1721071 at *7 ("Because the unrebutted evidence shows that MCF's decision to terminate Plaintiff's employment pre-dated her FMLA protected activity, Plaintiff cannot show that FMLA retaliation was the 'but-for cause' of the termination of her employment.").

As best as can be discerned, Plaintiff's argument seems to be that dismissal on such grounds is only appropriate on summary judgment, rather than on a motion to dismiss. Opp. at 24-25. That is not correct. *See, e.g., Seabrook*, 148 F.4th at 273 (affirming Rule 12(b)(6) dismissal of retaliation claim where the plaintiff "does not allege facts to support an inference that Balocki was aware of her complaint.").

Obviously, where a plaintiff's own allegations render it physically impossible for the decisionmaker to have known about the FMLA request at the time the decision was made, the Court can and should dismiss the claim on the allegations. *See id.*

### 2. Plaintiff's FMLA Interference Claim Should Be Dismissed.

In the Supporting Brief, the Society noted multiple reasons why the FMLA interference claim failed. Supp. Brief at 24-25. Plaintiff's Opposition fails to overcome those bases for dismissal.

First, as noted, the FMLA does not appear to require an employer to provide FMLA paperwork when, at the time the leave is requested, the employer has already predetermined that the employee will be terminated before the FMLA leave can be taken. *See* 29 CFR § 825.216(a). Plaintiff offers no authority to the contrary.

Second, an FMLA interference claim is only viable if the employee can plausibly plead he "*has been prejudiced* by the violation." *Adkins v. CSX Transportation, Inc.*, 70 F.4th 785, 796 (4th Cir. 2023) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

There is simply no prejudice to an employee who is not given FMLA paperwork the day before his predetermined termination. In response, Plaintiff only states:

> But as a direct result of the Society's inference [sic], Mr. Williams never received his FMLA benefits. That is a harm. *See Karnes v. Midland Credit Mgmt.*, 2025 U.S. Dist. LEXIS 55180, at *11 (W.D. Va. Mar. 25, 2025) ("Harm or prejudice exists where an employee . . . loses compensation or benefits 'by reason of the violation.'").

Opp. at 26.

Plaintiff's argument does not work.  Plaintiff was already set to be terminated at the time of his FMLA request. *See* Am. Compl. ¶¶ 79, 109.  There was no "benefit" lost by not getting paperwork the day before his termination.  If Plaintiff had been given the paperwork and then immediately terminated (or, alternatively, taken leave and terminated at the beginning of his leave period) he would be in the exact same position.  In fact, *Karnes*, the case cited by Plaintiff, demonstrates this very point.  In that case, the Court dismissed an interference claim based on a mid-leave termination because the plaintiff's own allegations stated she would not be able to return to her position at the end of a 12-week leave period.  2025 WL 906793 at *5.

Likewise, because Plaintiff was already set to be terminated before he made his FMLA request, the lack of paperwork could not possibly have harmed him. *See, e.g., Harris*, 2024 WL 1721071 at *6 (no viable FMLA interference claim when employer made decision to terminate three weeks before request for FMLA leave); *Wright*, 2008 WL 4104180 at *4 ("When an employer's termination of an employee would have occurred whether or not the employee had requested FMLA leave, an FMLA interference claim cannot be sustained.")  Consequently, Plaintiff's interference claim must be dismissed.

**E.      Plaintiff's ADA Claims Should Be Dismissed.**

Plaintiff's Amended Complaint appeared to assert three separate claims under the ADA: (i) failure to engage in the interactive process; (ii) failure to accommodate; and (iii) wrongful discharge.  *See* Am. Compl. ¶ 194.  As noted in the Supporting Brief, the first two of these claims are time-barred and otherwise fail to state a claim.  Supp. Brief at 22-23.  Plaintiff's Opposition does not contest this conclusion or suggest that either is a viable claim.  *See* Opp. at 26-28. Consequently, these claims should be dismissed with prejudice.

Regarding the ADA wrongful discharge claim, this claim fails for the same reason the

FMLA retaliation claim fails – Plaintiff alleges that the decision to terminate was made months before his alleged heart attack even occurred, meaning it could not be the but-for cause of his termination.[7]    Plaintiff fails to coherently rebut this argument.    Consequently, the wrongful discharge ADA claim must be dismissed as well.  *See, e.g., Seabrook*, 148 F.4th at 273.

**F.**    **Dismissal of the Claims Should Be With Prejudice.**

As noted previously, when granting a Motion to Dismiss, the Court has discretion to dismiss the claims with prejudice.  *See United States ex rel. Nicholson v. MedCom Carolinas, Inc*. 42 F.4th 185, 196 (4th Cir. 2022) ("In the Fourth Circuit, district courts are not required to give plaintiffs one without-prejudice ruling on the merits before dismissing with prejudice. . . plaintiffs do not get a dry run as a matter of right.").  The Court should exercise that discretion.

Plaintiff initially filed a 41-page, 12-count Complaint.  Dkt. 1.  After Counsel for the parties discussed the Society's intention to file a motion to dismiss and the bases for such a motion, Plaintiff filed the Amended Complaint, which dropped four of the initial claims, added a new retaliation claim, and expanded the allegations from 41 pages to a massive 101 pages.  It is apparent from a straightforward reading of the Amended Complaint that much of its length is the result of unnecessary repetition of the same factual allegations throughout, with slight changes to the wording.  For example, the alleged "crack the whip" quote is mentioned in *over 20 separate paragraphs* without ever giving a substantive expansion on its context beyond those alleged in Paragraph 74.  On the other hand, Plaintiff also hides crucial allegations in the pleading. For example, Plaintiff's Title VII retaliation claim relies heavily on one sentence located in

---

[7] In order to state an ADA wrongful discharge claim, Plaintiff is required to assert sufficient facts to plausibly allege that "his disability was a 'but-for' cause of his termination," meaning it is subject to the same standard as the FMLA retaliation claim. *See Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 169 (4th Cir. 2024).

Subparagraph (f) of Paragraph 245. *See* Opp. at 18, 19. The end result is a pleading that has violated the spirit of the Rules and imposed an incredibly unnecessary burden on both the Society and the Court to wade through. *See* Rule 1 (requiring employment of the rules for a "just, speedy, and inexpensive determination of every action and proceeding"); Rule 8 (requiring pleadings to be a "short and plain statement"). Given this background, the Court should use its discretion to avoid imposing any additional excessive burden of having to brief a further motion to dismiss.

Furthermore, given Plaintiff's apparent desire in drafting the Amended Complaint to make it as long as feasible, it is reasonable to presume that if there were any additional relevant factual allegations, he would have pled them already. Although Plaintiff disputes this presumption, he fails to proffer *any* additional allegations that he could add that would meaningfully change the analysis. *See* Opp. at 28-29. There are none. Consequently, the Court should exercise its discretion to dismiss his claims with prejudice.

## CONCLUSION

For the reasons stated above and in the Supporting Brief, each of Plaintiff's claims is flawed and should be dismissed with prejudice.

Dated: January 21, 2026

Respectfully submitted,

*/s/ Edward Lee Isler*
Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
John W. H. Harding, Va. Bar No. 87602
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
Email: eisler@islerdare.com
Email: mticatch@islerdare.com
Email: jharding@islerdare.com

*Counsel for Defendant*
*Navy-Marine Corps Relief Society*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of January 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically sends notification to the following:

> Adam Seth Nadelhaft
> Charlson Bredehoft Cohen Brown & Nadelhaft PC
> 11260 Roger Bacon Dr, Suite 201
> Reston, VA 20190
> 703-318-6800
> Fax: 703-318-6808
> Email: anadelhaft@cbcblaw.com
>
> *Counsel for Plaintiff*
> *Willie Williams*

/s/ Edward Lee Isler
Edward Lee Isler, Va. Bar No. 27985
ISLER DARE, P.C.

*Counsel for Defendant*
*Navy-Marine Corps Relief Society*